# H. LAFFERTY v. SCHUYL. RIVER ETC. R. CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADEL-
PHIA COUNTY.

Argued January 17, 1889—Decided February 25, 1889.

1. A landowner may continue in the cultivation of his land after the
location of a railroad upon it, until actual entry by the company, and
may recover compensation, not only for injuries to the land, but for the
loss of growing crops planted before bond given or notice of an intent
to enter for construction.
2. So, a tenant to whom the land is demised after the location of the
line and with notice thereof, may recover for all his growing crops,
destroyed by the construction, which were planted before he had notice
of the time when his possession would be interfered with by the com-
pany.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, MCCOLLUM and MITCHELL, JJ.

No. 83 July Term 1888, Sup. Ct.; court below No. 208
March Term 1886, C. P. No. 1.

On March 30, 1886, a summons in trespass issued in an
action by Henry Lafferty against the Schuylkill River East
Side Railroad Company, to recover damages caused by the
defendant company in constructing its railroad through a
truck farm of which the plaintiff was a tenant under a lease
from the owner.

At the trial on February 28, 1888, the following were the
facts as they appeared in the evidence.

In 1884 the defendant company made the preliminary sur-
veys for a line of railway, and in April, 1885, located it over
the land of John J. Krider in the First ward, Philadelphia.
Negotiations then commenced with Mr. Krider for a settle-
ment of the land-damages.

On July 3, 1885, an ordinance of councils of the city was
enacted giving consent to the company's occupancy of streets
and highways, and in this ordinance the road was referred to
as having been located: City Ordinances, 179.

Statement of Facts.

On August 31, 1885, by a written agreement Mr. Krider demised the farm to the plaintiff for five years from March 1, 1886, except as to the part unoccupied by himself of which the plaintiff was to have immediate possession. The rental was $800 per annum, which was the full rental value of the land as it then existed. The lease provided as follows:

"It is further agreed that the said John J. Krider shall not be liable to the said Henry Lafferty for any losses or reductions in rent of said premises by reason of the present contemplated railroad passing through the premises."

The plaintiff at once went into possession of the unoccupied land of the farm, including most of that subsequently taken by the defendant, and plowed and planted until interrupted by the winter.

The negotiations of the defendant company with the land-owner continued until in December, 1885, when an agreement was reached which was put into writing on January 18, 1886, whereby the company bought the strip of ground sixty feet wide through the farm " for the sum of $6,000, clear of all incumbrances, and free from all tenant's claims." The grading was then commenced, and the following February the purchase money was paid in full and deed delivered. The company refused to recognize the plaintiff's claim for compensation.

The plaintiff, having given testimony as to the injuries suffered, rested his case, when the defendant company moved the court for a judgment of compulsory nonsuit, on the ground that as the plaintiff's occupancy and use of the demised premises was after the land had been appropriated by the company, he was not entitled to recover.

The court, BIDDLE, J., granted the motion for a judgment of nonsuit, with leave, etc., saying:

"This is a very nice point to decide. I do not think the authorities indicate very precisely and clearly what the survey and location mean in every case. It may mean one thing as regards third parties, and another thing as regards the owner of the land. But in this case, in my opinion, inasmuch as the road was, according to the testimony of the plaintiff himself, both surveyed and located, and with the consent of the owner of the soil and the consent of councils obtained, as to the

amount which it was necessary that they should give their consent to, and the location of the road having been recited in the ordinance of councils and referred to in the lease, I think that that was a taking of the land which prevented anybody who came in as late as the 31st of August, 1885, from obtaining any title which would require damages to be paid.

A motion to vacate the judgment of nonsuit having been refused by the court in banc, the plaintiff took this writ, assigning as error the entry of the judgment of nonsuit, and the refusal to vacate it.

*Mr. Preston K. Erdman* and *Mr. R. Loper Baird* (with them *Mr. Joseph Hopkinson*), for the plaintiff in error:

1. Until compensation is paid or secured, a private corporation can acquire no right in property under eminent domain, or interfere with the owner's use or disposition of it: Gilmore v. Railroad Co., 104 Pa. 281; Hoffman's App., 118 Pa. 512; O'Brien v. Railroad Co., 119 Pa. 184. It follows, that on August 31, 1885, the defendant had acquired no rights in the property in question, nor had it become liable to the owner in any damages. It had neither paid nor secured to him compensation for the land to be taken or injured, nor had it by any act committed itself irrevocably to any location over the property; neither had it actually undertaken to enter or work upon any part of it. Mr. Krider was therefore in the enjoyment of an unimpaired right and title to his farm, and, being so, granted a term of years to the plaintiff, who then became a bona fide owner and entitled to compensation for any damage to his estate: Penn. R. Co. v. Eby, 107 Pa. 166.

2. It is contended, however, that on August 31, 1885, the defendant had appropriated the land subsequently taken by it; that the damage for the appropriation and taking had already occurred, and a right of action had accrued to the owner; whereby the plaintiff's lease was but for the land subject to the right of way of the defendant company. The authorities adduced to support this argument may be classified as follows:

(*a*) Cases where municipalities by ordinance under statutory authority, direct that streets be opened, or grades be changed,

the statute providing for compensation. These cases are not in point, because " the state herself exercises her own power; she could proceed at once upon making a sufficient provision for compensation: " Dimmick v. Brodhead, 75 Pa. 464; McClinton v. Railroad Co., 66 Pa. 409; Pierce on Railroads, 163.

(b) Cases where a railroad has taken possession and partly or wholly constructed its road; where it is held that the injury to the property is complete, conferring upon the owner a right of action which does not pass by the grant of the land: McFadden v. Johnson, 72 Pa. 336; McClinton v. Railroad Co., 66 Pa. 409; Davis v. Railway Co., 114 Pa. 308. These cases are eliminated by the fact that in the present case no entry had been made at all.

(c) Cases where the railroad company has been unable to agree with the landowner as to compensation, and has begun proceedings in court to ascertain damages, defined its route, and proceeded to judgment, in which case the railroad cannot escape payment by changing its location: Neal v. Railroad Co., 2 Gr. 137; Beale v. Railroad Co., 86 Pa. 509; Heise v. Railroad Co., 62 Pa. 68. In the present case, at the date of the lease there had been no failure to agree, and neither party could have invoked the statutory proceedings: Reitenbaugh v. Railroad Co., 21 Pa. 104; Darlington v. United States, 82 Pa. 382. What right of action was in Krider, or any one, on August 31, 1885?

3. The provisions of the lease expressly contemplated damages to the plaintiff from the expected location, but saved the liability of the landlord therefor, or to a reduction of the rent by reason thereof; the plain meaning of which was that the plaintiff must look to the railroad company for indemnity: Dyer v. Wightman, 66 Pa. 428. Moreover, a part of the land when eventually taken had upon it crops belonging to plaintiff. So far as these crops are concerned, it is submitted that the case is ruled by Gilmore v. Railroad Co., 104 Pa. 281.

*Mr. Wm. H. Addicks* (with him *Mr. Lewis C. Cassidy*), for the defendant in error:

1. Gilmore v. Railroad Co., 104 Pa. 281, is not inconsistent with the general rule of the decisions which are all to the effect that the right of action accrues when the location is fixed and

determined, and that that right includes injuries due to location and subsequent construction. If the construction has been completed, then the plaintiff, under Gilmore v. Railroad Co., shows the actual damage due to construction. Hoffman's App., 118 Pa. 512, relates only to the fund the plaintiff must look to for damages. Moreover, road and street cases are exactly analogous in effect and are ruled by the same principles now urged on behalf of defendant: Large v. Philadelphia, 35 Pa. 231, n.; Sower v. Philadelphia, 35 Pa. 231; Fifth & Sixth St., 4 W. N. 443; Philadelphia v. Wright, 100 Pa. 235.

2. The permanent location of a railroad is an appropriation of private property to public use. It fixes the date of the legal injury. It vests a right of action for all damages, which cannot be divested by a change of location: Pittsb. etc. Ry. Co. v. Commonwealth, 101 Pa. 192; Neal v. Railroad Co., 31 Pa. 19; Wadhams v. Railroad Co., 42 Pa. 310; Heise v. Railroad Co., 62 Pa. 67; Beale v. Railroad Co., 86 Pa. 509; Davis v. Railway Co., 114 Pa. 314. The action is not for an ordinary trespass. No actual trespass was committed. The injury if any is purely consequential, an injury arising from the proposed construction and completion of the road which has already been undertaken: O'Brien v. Railroad Co., 119 Pa. 184.

3. The location of a railroad vests a right to damages which is purely personal, and does not run with the land or pass by deed; subsequent purchasers or tenants take with notice and subject to the easement: Campbell v. Philadelphia, 108 Pa. 300; Tenbrooke v. Jahke, 77 Pa. 392; McFadden v. Johnson, 72 Pa. 336; Turnpike Road v. Brosi, 22 Pa. 32; Davis v. Railway Co., 114 Pa. 308.

OPINION, MR. JUSTICE WILLIAMS:

When a railroad company locates its line of road over the lands of private owners it secures thereby a right to enter upon and occupy the land covered by such location. The actual entry cannot be made until the damages accruing to the owner shall be paid or secured, but the means for ascertaining the damages are provided by law, where the parties cannot agree upon them, and the owner cannot prevent the exercise of the right of eminent domain by the company. But while the owner has notice, by the location of the road

over his lands, of the purpose of the company to appropriate so much as the line of the road covers, he has no notice of the time when actual possession will be required. He may doubtless abandon the land covered by the line as located to the company, and proceed to have his damages assessed; or, he may wait for the company to take the initiative and continue meantime to occupy and cultivate it. If he takes the latter branch of the alternative, the crops planted after the location and before notice or bond given by the railroad company, are proper subjects for compensation.

The reason for this is that it may be months or even years after the location of the line before the company will be ready to enter upon the land for purposes of construction or to take the steps necessary for the assessment of damages, and the owner has a right to remain in possession until actual appropriation of his land by the company. This was held in Gilmore v. Railroad Co., 104 Pa. 275, and has been recognized in other cases. If therefore Krider had made no lease of his land but continued to cultivate it himself, he would have been entitled to claim damages, as well for the loss of growing crops as for the injury done to the land, provided the crops had been planted before bond given or notice of an intent to enter upon the construction of the road. But Krider made a lease to Lafferty, and the tenant planted the crops that were destroyed. He had notice of the fact that a line had been located over the land. The court so found and we think the evidence was sufficient to justify the finding, but it is not alleged that he had any notice of the time when the company intended to make an actual entry. So far as he had notice he was of course affected by it, and he cannot now be heard to complain that the value of his term has been diminished and his just expectations disappointed by a circumstance of which he had full notice and which his lease shows had been considered before he executed it; but, being without any notice of the time when his possession would be interfered with, he had the same right to occupy and cultivate that his lessor could have exercised if the lease had not been made. The lease transferred the possession, with the attendant right to cultivate, from the lessor to the lessee, and the right to be paid for an injury done to growing crops passed with the right to plant them. When

the railroad company made their entry upon the land, they found Lafferty in possession and his crops in the ground. They were fixed with notice of his lease by his possession, and they could not discharge their liability to him by payment to his landlord.

This branch of the plaintiff's claim seems to have escaped the attention of the court below, and for this reason only,

The judgment of nonsuit must be reversed, and a venire facias de novo awarded.