KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* BOLES.

Opinion delivered November 30, 1908.

1. EMINENT DOMAIN—DEPOSIT OF ASSESSMENT—RIGHT TO APPEAL.—While Kirby's Digest, § 2954, providing that where damages from a railroad company's right of way have been assessed it shall be the duty of such railroad company to deposit or pay the amount assessed within thirty days after such assessment, does not require the payment of such assessment in case an appeal has been taken until the cause has been finally determined, a deposit of the assessment, made after an appeal therefrom has been taken, will not preclude the railroad company from prosecuting an appeal if such payment was made in good faith under a belief that it was necessary to make it within the required time, whether an appeal was taken or not. (Page 535.)

2. MUNICIPAL CORPORATIONS—CONTROL OF ALLEYS.—Alleys are public ways, which are under control of municipal authorities. (Page 537.)

3. LIMITATION OF ACTIONS—MUNICIPAL CORPORATIONS.—Since the passage of the act of March 26, 1885 (Kirby's Digest, § 5648, subdiv. 3), providing that no statute of limitations or lapse of time that any encroachment or obstruction upon any street shall have existed "shall be permitted as a bar or defense against any proceeding or action to remove or abate the same," no title to an alley of a city of the first class can be acquired by operation of the statute of limitations. (Page 537.)

4. EMINENT DOMAIN—VALUE OF SEVERAL LOTS AS UNIT.—Although several lots of land sought to be condemned for railway purposes are separated by an alley, they may be treated as parts of a single tract for the purpose of determining the damages if the testimony shows that they are used as a unit. (Page 538.)

5. SAME—DAMAGES—VALUE OF HOUSE.—In a suit to condemn for railroad purposes land on which stood defendant's house, it was proper to permit defendants to prove the kind and character of materials used in the construction thereof. (Page 539.)

6. SAME—VALUE OF LAND FOR INDUSTRIAL PURPOSES.—It was proper, in a condemnation suit, to permit the defendants to prove the present or prospective value of the land as industrial property, in order that

the jury may satisfactorily determine for what price it could be sold upon the market. (Page 539.)

7. SAME—TIME OF VALUATION OF LAND.—In a condemnation proceeding instituted by a railway company, the value of land taken for its right of way is to be estimated as of the time the petition was filed, (Page 540.)

8. LIMITATION OF ACTIONS—MUNICIPAL CORPORATION.—Kirby's Digest, § 5648, subdiv. 3, providing that no statute of limitations or lapse of time that any encroachment or obstruction upon any of the streets of a city of the first class "may have existed or been continued shall be permitted as a bar or defense against any proceeding or action to remove or abate the same, or to punish for its continuance *after an order has been made by the city council or the police court for its removal or abatement*," does not contemplate that the statute of limitations shall not cease to run against a city until an order is made for the removal of the encroachment or obstruction; the clause italicized qualifying merely the punishment for the continuance of the encroachment or obstruction. (Page 540.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; reversed.

### STATEMENT BY THE COURT.

On the 6th day of August, 1907, condemnation proceedings were instituted by the Kansas City Southern Railway Company against Catherine K. Boles and others for the assessment of damages for the right of way of its railroad across lots one to twelve fractional in block 533, Reserve Addition to the city of Fort Smith, Arkansas, belonging to said defendants.

The issues were submitted to a jury under instructions of the court, and a verdict rendered for defendants in the sum of $32,500.

Objections were made by the plaintiff to the introduction of certain testimony and to the instructions of the court. A sufficient reference to the testimony for a proper understanding of the issues raised will be made under appropriate headings in the opinion. Hence it will not be necessary to abstract it here.

The plaintiff has duly prosecuted an appeal from a judgment rendered upon the verdict.

*Read & McDonough* and *S. W. Moore,* for appellant.

1.    The jury were incompetent; they had formed an opinion. Kirby's Digest, § 4402; 60 Ark. 245; 21 *Id.* 336; 61 *Id.* 357.

2.    It was inadmissible to prove the details of the materials that went into the construction of the building. *It is the market value of the property.*    49 Ark. 381; 106 Ill. 253; 66 *Id.* 219; 4 Suth. on Dam., § 1089; 3 Joyce on Dam., § § 2184-5; 43 So. Rep. 79; 39 Pac. 571; 12 *Id.* 641; 44 A. & E. R. Cas. 73.    The testimony of Mrs. Boles and Reddick and all the witnesses as to material that entered into the house was incompetent.    49 Ark. 381; 104 N. Y. S. 667; 64 Atl. 680.

3.    Alleys are public highways.    77 Ark. 177, 182.    No damages allowable for an alley.    41 Ark. 49; Kirby's Digest, § 5648.

4.    It was error to admit testimony as to increase in value. It is expressly prohibited.    Kirby's Digest, § § 2901, 2953; 54 Ark. 144.

5.    It is not the cost of reproduction of a building but the market value.    106 Ill. 253; 66 *Id.* 291; 4 Suth. on Dam., § 1089; 3 Joyce on Dam., 2184-5.

*Ira D. Oglesby,* for appellees.

1.    There was no error in admitting the testimony of Mrs. Boles, T. T. Reddick and others.    It was competent to show the character of material of which the residence was constructed to prove its value.    49 Ark. 381; 41 *Id.* 202.

2.    It was proper to prove any facts that tended to show that values had improved or increased in that vicinity; in fact had advanced in price.    54 Ark. 140; 75 N. W. 501; 43 N. C. 359; 59 S. W. 556; 25 S. W. 826; 68 *Id.* 745.

3.    The alley belonged to plaintiffs.    The company could not take it without payment.    41 Ark. 49; 77 *Id.* 177.

4.    There are no errors in the instructions, and the verdict is not excessive.    49 Ark. 381.

HART, J. (after stating the facts).    Appellees have moved to dismiss the appeal in this case because, after appellant had been granted an appeal in the court below, it paid to the clerk of the circuit court the full amount of the judgment obtained against it by appellees.    In response to this, counsel for appellant say that, at the time the deposit was made with the clerk, this court had not, to the knowledge of appellant, passed upon the meaning

of section 2957 of Kirby's Digest, which requires that the deposit of the amount of damages shall be made within 30 days after the assessment. That, before the expiration of the 30 days, they made the deposit solely for the purpose of complying with the statute above referred to, and also on the same day filed their supersedeas bond. That the deposit is still in the hands of the clerk, and has not been applied to the satisfaction of the judgment.

This court held in the case of *Arkansas, Louisiana & Gulf Railway Company* v. *Kennedy,* 84 Ark. 365, that the provision of section 2954 of Kirby's Digest does not prohibit the railroad company from appealing from the assessment, nor require that payment of the assessment be made until the cause has been finally determined, where an appeal has been taken.

The opinion was delivered on the 18th day of November, 1907. The deposit was made on November 25, 1907. Counsel for appellant lived in a distant part of the State, and did not know of the decision when the deposit was made. They could not be considered negligent in not having learned of the decision. The statute in question was of doubtful construction. The deposit avowedly was made for the purpose of complying with it. It was so understood by all parties concerned. Because of this understanding, the clerk refused to turn over the money to the appellees on demand by them. Under the circumstances surrounding the transaction, we think that the deposit was not made for the owner of the land, nor for the present satisfaction of the judgment, but was made to the order of the court to be held by the clerk for the landowner upon the final determination of the case, believing at the time that this was the proper construction of the act. In view of this, we think the motion to dismiss should be denied.

Counsel for appellant first insist that certain of the jurors were incompetent because they had formed and expressed an opinion concerning the matter in controversy. Inasmuch as the judgment must be reversed for the reasons hereinafter expressed, it will not be necessary to discuss this feature of the case; for the matters complained of will not likely arise on a new trial of the case.

2.   Counsel for appellants also contend that the court erred

in instructing the jury that the defendants had a right to recover the value of the alley. The instruction is as follows:

"5. You are instructed that when the United States conveyed the Reserve to the city of Fort Smith, it was laid off and platted by blocks and lots, with streets and alleys; that at a sale of the Reserve property Thomas Boles bought all of the lots comprising block 533, and then inclosed the entire block, including the alley, and that said lot and alley has been inclosed for more than seven years next before August 6th, the said Boles and his heirs claiming to own same and being in adverse possession of same, then the alley belongs to defendants, and they are entitled to pay for it."

We think the court erred in giving this instruction. Counsel for appellees insist that the instruction was correct, and in support of his contention cites the case of *Ft. Smith* v. *McKibbin*, 41 Ark. 45, where it was held that "municipal corporations are bound, as individuals are, by the statute of limitations, and adverse possession of an alley in a city for the statutory period will give title to the occupant and bar the city." But that case was decided in 1883. Our Legislature changed the law as in regard to cities of the first class by the passage of the act of March 26, 1885. See Acts of 1885, p. 97; Kirby's Digest, § 5648, subdiv. third.

Sec. 5648 provides that "in order to better provide for the public welfare, safety, comfort and convenience of their inhabitants, the following enlarged and additional powers are hereby conferred upon cities of the first class, viz:

And the third subdivision of the section reads as follows:

"Third. To punish, prevent or remove encroachments or obstructions upon any of the streets, sidewalks, wharves or other public grounds of such city, by buildings, fences, or structures of any kind, posts, trees or any other matter or thing whatsoever, and no statute of limitation or lapse of time that any such obstruction or encroachment may have existed, or been continued, shall be permitted as a bar or defense against any proceeding or action to remove or abate the same, or to punish for its continuance, after an order has been made by the city council or the police court for its removal or abatement."

In the case of *Hope* v. *Shiver*, 77 Ark. 177, alleys were held

to be one of the public ways under the control of the municipal authorities.

Fort Smith became a city of the first class on the 29th day of January, 1887. The United States caused a part of the abandoned military reservation of Fort Smith, Arkansas, to be surveyed and platted into city lots and blocks. The streets and alleys were dedicated to the use of the public, and the lands were conveyed to the city of Fort Smith, the description giving the lot and block numbers. The lots in controversy were among the number. On the 25th day of May, 1885, the city of Fort Smith conveyed the lots involved in this suit to Thomas Boles. Judge Boles was the husband and father of the appellees. In the deed from the city to him the lots were sold by number and reference made to the same map, which is made part of the deeds from the United States to the city of Fort Smith. Thus it will be seen that a title to the alleys could not have been vested in the appellees by operation of the statute of limitations on March 26, 1885, the date of the passage of the act removing the bar of the statutes of limitations against cities of the first class. Hence we conclude that the court erred in telling the jury that they might find that the alley belonged to the appellees.

For the reasons that the case must be tried anew in the circuit court, we will consider the other assignments of error of counsel for appellant.

3. Counsel for appellant also contend that the court erred in admitting testimony to show that the alley was fenced, and that all the lots were in a common inclosure and were used as a part of the home of appellees. This testimony was competent to show the connected use of the lots. Although the lots are separated by an alley, they may be said to be contiguous and may be treated as parts of a single tract for the purpose of determining damages in condemnation proceedings, if the testimony shows that they are used as a unit.

This court has frequently held that in a proceeding by a railroad company to condemn a right of way the assessment of damages is not restricted to the injury done to the legal subdivision of land described in the petition, and that if the tract described is part of a larger connected body of land the owner may recover for the injury done to the tract as a whole. It

follows from this that where the whole of a tract of land is taken it should be valued as a whole, and not according to the legal subdivisions as distinct and separate parcels of land.

"Whether a particular lot of land constitutes an independent parcel is a question which cannot be determined in the affirmative by the mere fact that it is separated from other land by a highway or street, or by paper lines, or by fences; nor can it be determined in the negative by the mere fact that it is all in one ownership and is not divided by streets or by paper lines." *Wellington* v. *Boston & Maine Rd.,* 164 Mass. 380; *St. Louis, M. & S. E. Rd. Co.* v. *Aubuchon* (Mo.), 9 L. R. A. (N. S.), 426, and cases noted.

4. Counsel for appellants also contend that it was error to permit appellees to prove the details of the materials that went into the construction of the home. There was no error in this regard. In the case of *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, the court said:

"When the witness has made his estimate as to the market value of the property, it is competent to support his estimate by having him describe the property, giving location, advantages and surroundings, though ordinarily this would be uncalled for unless his estimate was attacked on his cross examination. . . . How much latitude should be allowed the parties in the way of bringing out in the testimony collateral, or perhaps we should say cumulative, facts, to support the estimates made by witnesses, is a matter that must be left very largely to the discretion of the trial judge. . . . As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the landowner should be allowed to state, and have his witnesses state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual."

Certainly, in such case the buyer would want to know the kind and character of the materials used in the construction of the house, whether it was well or ill built and the like. These things would not be apparent only in a general way by an inspection of the house.

5. Counsel for appellant urge that it was error to admit tes-

timony as to what the property was worth as prospective industrial property. The rule as established in this State is that "the owner may be allowed to show every advantage that his property possesses, present and prospective, in order that the jury may satisfactorily determine what price it could be sold for upon the market." *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. *supra; Little Rock & Ft. S. Ry.* v. *McGehee,* 41 Ark. 2ʋ7.

6. Counsel for appellant also contend that it was error for the court to admit testimony as to the increase in value of the property from the 6th day of June to the 6th of August, 1907. The railroad contemplated taking the property on the date first named, but the petition for condemnation was not filed until the latter date. In the case of *Newgass* v. *Railway Co.,* 54 Ark. 140, it was held that "in a condemnation proceedings instituted by a railway company, the value of land taken for its right of way is to be estimated as of the time the petition was filed."

6. Other errors are urged as to the admissibility of testimony, but they are not sufficiently abstracted for us to determnie them.

For the error indicated in giving the 5th instruction requested by the appellees, the judgment must be reversed, and the cause remanded for a new trial.

ON REHEARING.

Opinion delivered January 11, 1909.

HART, J. Counsel for appellee contends that, under subdivision 3 of sec. 5648 of Kirby's Digest, the statute of limitations does not cease to run against a city until after an order has been made for the removal or abatement of the obstruction. This seems to us to be a strained construction to put upon the statute. It is obvious that the seven year statute is applicable to such cases. If the city council desired the obstruction or encroachment removed, and should make an order for its removal or abatement, it is barely possible that it would wait seven years to enforce the order. If that was the construction intended, there would seem to be no necessity for the passage of the act. It could hardly serve any useful purpose. On the other hand, if the construction placed upon it by the court in our opinion is

correct, the statute could serve a useful purpose. If the city does not require the use of all or any part of its streets or alleys, it may permit the abutting owners to use and encroach upon them for an indefinite period of time, and yet lose none of its rights. In the case of *Fort Smith* v. *McKibbin,* 43 Ark. 45, it was held that municipal corporations are bound, as individuals are, by the statute of limitations; and adverse possession of an alley in a city for the statutory period will give title to the occupant and for the city. This opinion was delivered in 1883, and the act in question was passed in 1885 at the next session of the Legislature. It was evidently passed to remedy what the Legislature considered a defect in our municipal laws, which was brought to their attention by the decision of *Ft. Smith* v. *McKibbin, supra.*

We think the words "after an order has been made by the city council," etc., are limited to the words "or punish for its continuance," and that the obvious and natural construction is that the city council may punish for a continuance of an encroachment or obstruction to the streets after it had made an order directing its removal or abatement.

The motion for a rehearing is denied.