MILLER COUNTY *v.* BEASLEY.

4-6528                                    156 S. W. 2d 791

Opinion delivered December 15, 1941.

*Dick Huie, Dennis K. Williams* and *Steel & Edwardes,* for appellant.

*Chas. A. Beasley, Jr.,* for appellee.

GRIFFIN SMITH, C. J.   In relocating Highway No. 82 in Miller county, certain lands were taken December 23, 1940,[1] under judgments of the county court.  In February of this year C. A. Beasley and W. E. Williams claimed damages.[2]  The following month Beasley's demand for $3,000 was disallowed, and in May, Williams' $300 claim was likewise disposed of.  Reasons assigned for the county court actions were that the road and general funds were in a depleted condition.

On appeal to circuit court in June Beasley was given judgment for $2,251.50.  Judgment in favor of Williams was rendered for $186.  The county clerk was directed to pay the obligations from funds appropriated for roads and bridges, "and, if none, then out of general revenue."

In circuit court the appeals were consolidated.  Trial was without jury.  Evidence was not preserved; hence, only the record is before us.

The county was represented by Dennis K. Williams, deputy prosecuting attorney.  Although the court docket bears notation that there was consent to trial by the judge, it is contended a jury was not waived in statutory form.[3]

The deputy prosecuting attorney testified he did not remember agreeing to waive trial by jury, then added, "I'm sure I did not."

We do not sustain the exception.  Williams (the deputy) testified very frankly he knew the cases were set

---

[1] The proceeding for condemnation was under authority of § 6968 of Pope's Digest. [See *Arkansas State Highway Commission* v. *Hammock, Chancellor,* 201 Ark. 927, third footnote on page 929; 148 S. W. 2d 324, third footnote on page 326.  Miller county was not excepted by Act 611 of 1923.]

[2] Beasley and Williams were separate proprietors.

[3] Pope's Digest, § 1533.

for trial the day heard. He also knew there would be no juries during the June term. Participation in the trials was, in the circumstances, as effective a waiver as though the intent had been expressed. *Naperskie* v. *Trevillion,* 202 Ark. 638, 151 S. W. 2d 922, is not in point. In that case there was no waiver; nor was there conduct from which consent to trial by the court without a jury could be implied.

Essential questions are: (1) Is Amendment No. 10 to the constitution in conflict with art. 2, § 22,[4] to such an extent that compensation for damages (enforcement of which is attempted after the property has been taken) becomes payable irrespective of Amendment No. 10?; and, (2) if Amendment No. 10 is not subservient to art. 2, § 22, do such claims (a) date from the county court's judgment? (b) from the time of physical entry upon the land?, or (c) does the obligation to charge the transaction against revenues of a particular year arise when the claim is filed?

If it should be held that appellees' rights, in point of time, are concurrent with and restricted to rendition of the judgment, payment would be limited to unexpended and unimpaired revenues brought forward from 1940. Conversely, if—within the meaning of Amendment No. 10 —the obligation is not one for classification until the order "laying out the road" is consummated by entry upon the premises, failure of appellant to show by bill of exceptions when this occurred is an omission for which it is chargeable; hence, we must assume that the claims, if in other respects valid, are properly allowable against 1941 revenues.

In *Justice* v. *Greene County,* 191 Ark. 252, 85 S. W. 2d 728, it was said that because of the provisions of art. 2, § 22, of the constitution, there was no way for the county to escape "paying such judgment as appellant may recover if he files and prosecutes his claim." It was also said in that case, in commenting upon the provisions of § 5249 of Crawford & Moses' Digest[5] allowing payment

---

[4] "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated, or damaged for public use, without just compensation therefor."

[5] Sec. 5249 of Crawford & Moses' Digest is § 6968 of Pope's Digest.

to be made from general revenue if road funds were depleted: "Proof that these funds have been exhausted for the fiscal year of 1934 would and could not prevent [appellant] from ultimately collecting his damages *out of these or other available funds.*"[6] It was then said that the appellant had until June 7, 1935, to file his claim. The opinion was handed down July 8, 1935—a month and a day after appellant would have been barred as a consequence of failure to file his claim prior to June 7.

The statute construed in the Justice case provides that after making the order of condemnation and having it entered of record, road construction may begin.

Six and a half acres belonging to Justice were condemned. Validity of the judgment was challenged on the ground that county appropriations for the 1934 fiscal year exceeded revenues by more than seven thousand dollars. On appeal to circuit court Justice offered evidence that revenues receivable from all sources had been appropriated. The appeal was dismissed and this court affirmed.

The case turned upon the point that Justice, instead of enjoining the county judge (who was ex-officio road commissioner) from entering upon the lands, and instead of presenting his demand for damages, sought to have the judgment declared void upon a showing that funds were not available for payment of a claim he had not asserted. While the opinion says there is no way for the county to escape paying the judgment, it also says that payment shall be *from available funds.*

The holding in *Arkansas State Highway Commission* v. *Hammock, Chancellor,*[7] is that where lands have been condemned for highway purposes and payment cannot be made because county funds are exhausted, the chancery court has jurisdiction to enjoin entry until the petitioner's demands, when adjudicated, are satisfied. The law as thus expressed was approved in *State Life Insurance Company of Indianapolis* v. *Arkansas State Highway*

---

[6] Italics supplied.

[7] 201 Ark. 927, 148 S. W. 2d 324.

374

*Commission*,[8] where it was said the rule laid down in *Sloan* v. *Lawrence County*[9] is that the state may [under Act 422 of 1911], without notice, condemn private property for public roads, " . . . but a statute which undertakes to determine the question of compensation, without notice, is void."[10]

In holding (as we do) that payment for lands taken for highway purposes, or damaged incidentally, must be from revenues of the fiscal year in which the obligation accrues, the effect may, in certain instances, be to shorten the period of a year mentioned in § 6968 of Pope's Digest as the time beyond which a claim is barred. Amendment No. 10 would be meaningless if it should be said that lands (for example) taken in June, 1941, could be paid for from the revenues of 1942 merely because, by statute, the injured property-owner may file his claim within twelve months. The general assembly can neither enlarge nor restrict the amendment.

But, it may be urged, the limitation begins to run ". . . from the date of the order laying out the county road." By reference to § 6968 it will be seen that the word "road" is separated from "provided" with a semicolon; the completion of the sentence being: " . . . provided, further, that when such order is made and entered of record laying out or changing any road, the county court or the judge thereof shall have the right to enter upon the lands of such owner and proceed with the construction of such road."

It is our view that the act of taking is not complete when the judgment of condemnation is rendered. Since such judgment may be without notice, the lawmaking body must have had in mind an order of condemnation followed by entry upon the land. Such entry, being physical and visible, affords the proprietor an opportunity to exact payment or to require a guaranteeing deposit.

[8] 202 Ark. 11, 148 S. W. 2d 671.

[9] 134 Ark. 121, 203 S. W. 260.

[10] See *Prewitt* v. *Warfield, County Judge, ante,* p. 137, 156 S. W. 2d 238.

If there is neither payment nor deposit,[11] resort may be had to injunction; but should the proprietor stand by and permit the land to be occupied and the improvement to proceed until substantial road work has been done, he is then relegated to the county's credit. The demand is against revenues for the year possession was taken, and all of the restrictions of Amendment No. 10 attach. The claim is one to be paid on a parity with others recognized by law as contractual; and it is inferior to that class arising from the performance of indispensable services— services made mandatory by the constitution or by statute, in respect of which the county has no discretion as to payment when an appropriation has been made.

The construction of § 6968 here given preserves harmony between art. 2, § 22, of the constitution, and Amendment No. 10. No one, except through failure to assert his rights before substantial work has been done on the condemned lands, can be deprived of the property without just compensation, while on the other hand payment will not conflict with the amendment.[12]

---

[11] Section 65 of Act 65 of 1929 is construed in *Arkansas State Highway Commission* v. *Partain*, 193 Ark. 803, 103 S. W. 2d 53. It was there said: "This Act is a declaration of the state's ancient right of eminent domain (§ 23, art. 2, constitution), but in so far as it permits the state highway commission *to enter into the possession* of private property, without first compensating the owner for the damages sustained by actual payment of the amount of such damages, or by a deposit of money covering them, in the court where this right is sought to be exercised, is violative of § 22 of art. 2 of the constitution." In the same opinion *Watson* v. *Dodge*, 187 Ark. 1055, 63 S. W. 2d 993, is quoted as follows: "The state was without power to take *possession* of the bridge without compensating the owner therefor, and the judgment of condemnation could not have been enforced until the compensation to which it adjudged the owner to be entitled had been paid."

[12] Amendment No. 10 was construed in *Arkansas Power & Light Co.* v. *Fidelity & Casualty Co. of New York*, 197 Ark. 187, 121 S. W. 2d 890. The Jackson county treasurer had paid warrants issued to the power company in 1933. The state, for use of the county, recovered from appellee, surety on the treasurer's bond, and the bonding company sued the power company to recover what it had been forced to pay. The chancery court held in favor of the bonding company and this court affirmed. In the opinion it is said: "Amendment No. 10 of the constitution prohibits the county court, levying board, or agent of any county from making or authorizing any contract or making any allowance for any purpose whatever, in excess of the revenue from

The judgment is reversed. The cause is remanded with directions that the circuit court remand to the county court, where the claim must be classified as herein set out.

---

all sources for the fiscal year in which said contract allowance is made. It also prohibits the county judge, county clerk or any other county officer to sign or issue any scrip, warrants, or make any allowance in excess of the revenue from all sources for the current fiscal year." In conclusion the writer of the opinion said: "If one could enforce the collection of warrants issued after the funds were exhausted, this would nullify Amendment No. 10."

In *Crawford County* v. *Maxey*, 196 Ark. 361, 118 S. W. 2d 257, the appellee, a former sheriff and collector, was due $8,214.37 for claims payable from 1931 and 1932 revenues, disallowed because of insufficient funds. The county court found that Maxey owed $667.22 for collections made in 1934. These the officer sought to have offset against the unpaid balance of 1931 and 1932. The trial court permitted this to be done, but on appeal the judgment was reversed. In the opinion attention was called to *Miller County* v. *Blocker*, 192 Ark. 101, 90 S. W. 2d 218, where the holding in *Stanfield* v. *Friddle*, 185 Ark. 873, 50 S. W. 2d 237, was cited to the effect that a distinction between statutory and contractual claims existed. Our holding was that the county should first pay its indispensable obligations—those incurred in the discharge of county governmental functions imposed by the constitution or by statute, ". . . after which, but not before, the county should pay those obligations which are permissible merely." It was then stated that if the county court disregarded the duty, or was not required by persons interested in the orderly administration of the county's government to discharge such duty, ". . . the contractual obligations [may] be allowed provided the allowance of claims covering them [does not exceed] the revenues for the year in which such claims [are] allowed."

In *Taylor et al.* v. *J. A. Riggs Tractor Company*, 197 Ark. 383, 122 S. W. 2d 608, it was held that Act 193, approved March 3, 1937, had the effect of classifying state gasoline turnback allotments as county funds, subject to the restrictions of Amendment No. 10. Following this decision the general assembly, by Act 299, approved March 14, 1939, authorized the payment of county turnback warrants against the three-mill road tax, and *bona fide* claims for which warrants had not been issued. The limitation was January 1, 1939, affecting claims on file or payments, evidenced by warrants for 1937 and 1938. [See *Logan County* v. *Anderson*, 202 Ark. 244, 150 S. W. 2d 197.