STATE HIGHWAY COMMISSION *v.* HOLDEN.

4-9225                                        231 S. W. 2d 113

Opinion delivered June 19, 1950.

*Daggett & Daggett,* for appellant.

*Cracraft & Cracraft,* for appellee.

ED. F. McFADDIN, Justice.   The question presented is the landowner's right to recover damages for his crops destroyed by the construction of a highway; and the answer to the question depends on whether the landowner's damages are to be fixed as of the date of (a) the making of the County Court order (under § 76-917, Ark. Stats.), or (b) the taking of the lands by actual entry.

On October 27, 1947, the County Court of Lee County, on petition of the State Highway Commission [1] and without notice to the landowner, made an order (under said § 76-917, Ark. Stats.) designating the location of a State highway across appellee's lands.[2]   On August 13, 1948,

---

[1] See § 76-510, Ark. Stats. 1947.

[2] Various other proceedings occurred:   Holden unsuccessfully attempted to remove the case to Federal court (see *Lee County* v. *Holden,* 82 Fed. Supp. 353).   Holden also filed petition in the Pulaski Chancery Court to require the Highway Commission to post a bond prior to actual entry, which bond was made on August 13, 1948.   Holden had filed claim against Lee County in the County Court; and after Federal court remand his claim was disallowed by the County Court and he appealed to the Circuit Court.   There he recovered the judgment from which the Highway Commission and Lee County prosecute the present appeal to this Court.   Dates as to bond and actual entry are found in the Federal case mentioned.

the Highway Commission filed a bond to assure the land-owner of the payment of his damages, and immediately thereafter the lands were actually entered and the construction of the highway commenced. The landowner (appellee, Holden) had planted and cultivated a cotton crop on the land in 1948, just as in previous years; and this 1948 crop was destroyed by the construction of the highway. The Circuit Court allowed the jury to award damages for the destruction of the cotton crop; and that is the only item challenged by appellants (State Highway Commission and Lee County) on this appeal. For convenience, we will refer to the appellants as "Highway Commission" and the appellee as "Holden".

The Highway Commission claims that the damages are to be determined as of the date of the County Court order (i. e. October 27, 1947) and cites, *inter alia, Newgass* v. *Railway Co.,* 54 Ark. 140, 15 S. W. 188; *Kansas City So. Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375; *School District of Ogden* v. *Smith,* 113 Ark. 530, 168 S. W. 1089; and *Keith* v. *Drainage District,* 183 Ark. 384, 36 S. W. 2d 59.

Holden claims that the damages are to be determined as of the actual entry on his land, that is, August 13, 1948; and cites, *inter alia, Greene County* v. *Hayden,* 175 Ark. 1067, 1 S. W. 2d 803; *Arkansas State Highway Comm.* v. *Partain,* 192 Ark. 127, 90 S. W. 2d 968; and *Miller County* v. *Beasley,* 203 Ark. 370, 156 S. W. 2d 791.

After a careful study, we reach the conclusion that the appellee is correct, and that the judgment should be affirmed under the authority of the cases cited by the appellee, as above listed. It is true that in *Newgass* v. *Railway Company, supra,* we said:

". . . As the filing of the petition is the attempt to assert the right of condemnation, and subsequent delay is without fault of either party, it seems fair to each alike that the assessment should be made with reference to value as of that date."

And it is also true that in *Mo. & No. Ark. Railroad Co.* v. *Chapman,* 150 Ark. 334, 234 S. W. 171, we said:

"It follows that the court did not err in holding that the value of the property should be proved as of the time of the filing of the suit, instead of the date the property was actually appropriated by the railroad company."

But in the two quoted cases, as well as in the other cases relied on by the appellants, the Statute, being considered in each case, authorized proceedings for condemnation in an adversary suit with notice given the landowner at the institution of the proceedings: whereas, in the case at bar, the County Court of Lee County, in making its order of October 27, 1947, was acting under § 76-917 [3] of Ark. Stats., which section entirely omits any requirement as to notice to the landowner prior to the making of the order opening the road. Such absence of notice has been discussed in some of our cases, of which *Sloan* v. *Lawrence Co.,* 134 Ark. 121, 203 S. W. 260, and *Greene County* v. *Hayden,* 175 Ark. 1067, 1 S. W. 2d 803, are two.

In *Greene County* v. *Hayden, supra,* we held that the language in § 76-917 Ark. Stats.—"twelve months from the date of the order laying out or changing any road"— meant *twelve months from the actual entry on the land,* because to hold otherwise would have allowed an order of taking without notice and a subsequent taking without compensation. We said:

"Here the undisputed evidence shows that the order of condemnation was entered in June, 1924, and that the county remained quiescent until January, 1926, at which time the route of the road as described in the order of condemnation was surveyed, but more than a year had then expired since the making and entry of the order of condemnation.

"The law does not permit a proceeding of this character to deprive the property owner of his day in court. If it did, the property owner would be deprived of his

[3] Sec. 76-917 is from Act 611 of 1923, which was prior to the Amendment No. 14 to the Constitution prohibiting local legislation. Lee County is one of the Counties to which the said Act 611 of 1923 is applicable.

right to be heard upon the question of compensation, and there is no question, under the Sloan case, *supra,* about the existence of this right. No legislation can deprive the landowner of this right. Yet, in practical effect, these landowners have been deprived of that right. Their causes of action were barred under the contention of the county before they were advised that it had accrued.

. . . . . . .

"It follows therefore that the causes of action were not barred, as the statute did not begin to run against the landowners until they had notice of the order of condemnation by the taking of their land by the entry thereon by the surveyor, and the claims were all properly filed within a year of that time."

With these holdings established, there came *Miller County* v. *Beasley,*[4] 203 Ark. 370, 156 S. W. 2d 791, in which was presented the question, whether the claim for taking of lands under § 76-917 Ark. Stats. was to be paid out of the funds for (a) the year in which the order was made, or (b) the year in which the lands were actually taken; and we said:

"It is our view that the act of taking is not complete when the judgment of condemnation is rendered. Since such judgment may be without notice, the lawmaking body must have had in mind an order of condemnation followed by entry upon the land. Such entry, being physical and visible, affords the proprietor an opportunity to exact payment or to require a guaranteeing deposit."

Since the "act of taking is not complete when the judgment of condemnation is rendered," it necessarily follows that the landowner is entitled to damages as of the date when the act of taking is complete—that is, when his lands are actually entered and taken under the order. After the judgment is rendered by the County Court, under § 76-917, the landowner may require security, such

---

4 There were other cases, such as *Arkansas State Highway Comm.* v. *Partain,* 192 Ark. 127, 90 S. W. 2d 968, and *Arkansas State Highway Comm.* v. *Partain,* 193 Ark. 803, 103 S. W. 2d 53; but *Miller County* v. *Beasley, supra,* is the case most nearly in point.

as bond, by Chancery Court proceedings before his lands be entered.[5]  Failure of the condemnor to make such security would prevent the entry, so that the lands might never be taken.  Certainly, therefore, the date of actual entry fixes the date for the determining of the damages under § 76-917 Ark. Stats.  The fact that the Highway Commission had put stakes through Holden's land before he planted the crop is not determinative.  There were several sets of stakes; and the highway was not constructed along one line of stakes, but went according to another line. Merely because the Highway Department has driven a stake in a field is not an act sufficient to constitute a taking of the land or to require the owner to cease using his land for its normal and natural purposes.[6]

## CONCLUSION

We hold that in a proceeding under § 76-917 Ark. Stats. the damages of the landowner for the normal and natural use of his land are to be calculated as of the date of actual entry, rather than as of the date of the County Court order.

Affirmed.

LEFLAR, J., concurs.

HOLT and GEORGE ROSE SMITH, JJ., dissent.

LEFLAR, J., concurring.  I concur in the result stated in the opinion prepared by McFADDIN, J., that the judgment of the Circuit Court should be affirmed, but at the same time I believe that the rule of law set out in the opinion of GEORGE ROSE SMITH, J., is correct.  Since the rule is set out clearly and succinctly in Judge SMITH's opinion, it is not necessary to repeat it here.

My agreement with the decision to affirm the judgment is based upon the view that, under the record in this case, there was no substantial evidence that the appellee landowner failed to act with reasonable prudence in

[5] See *Independence Co.* v. *Lester*, 173 Ark. 796, 293 S. W. 743, and *Arkansas Highway Comm.* v. *Hammock*, 201 Ark. 927, 148 S. W. 2d 324.

[6] See 18 Am. Jur. 896, and see, also, *Lafferty* v. *Schuylkill River Railroad Co.*, 124 Pa. 297, 16 At. 689.

planting his crops under the actual circumstances here present. The Circuit Judge, under this state of the evidence, was justified in not leaving to the jury the question whether appellee acted with reasonable prudence. The evidence has already been discussed in the two other opinions filed in this case, and there would be no advantage in analyzing it again in this opinion, particularly since the same facts are unlikely to be present in another case.

GEORGE ROSE SMITH, J., dissenting. In this case the Highway Commission obtained a county court order in October, 1947, by which a change in the location of the highway was authorized. The appellee had no notice of the county court proceedings, but by the following spring, when the appellee planted the crops now in question, the Highway Commission had marked the proposed right-of-way with flags. The appellee admitted at the trial that when he planted his crop he knew where the highway was going to be. In a similar situation we have held that the entry of the surveyor for the purpose of laying out the right-of-way supplies the notice that is lacking in the county court proceedings, and therefore the one-year period allowed for filing a claim for compensation begins to run against the landowner from the date of the surveyor's visible entry. *Greene County* v. *Hayden,* 175 Ark. 1067, 1 S. W. 2d 803.

As I see it, the real problem in this case is that of determining the landowner's proper course of action when the staking of the right-of-way puts him on notice that his land is to be taken. If he fails to plant a crop he may lose the use of the land for a year if the Highway Commission relocates the right-of-way or abandons the project altogether, as it has the privilege of doing. *Selle* v. *City of Fayetteville,* 207 Ark. 966, 184 S. W. 2d 58. On the other hand, if the landowner goes ahead with his planting the Highway Commission is compelled to pay unnecessary damages merely because it proceeds expeditiously and completes the taking before the crop can be harvested, as was true in this case. The majority solve this problem simply by saying that the landowner is

entitled to ignore the impending taking as far as the use of his land is concerned, even though he cannot ignore it as far as the filing of his claim for compensation is concerned. This does not seem to me to be the best available answer, since it gives the landowner all the advantage and penalizes the State for acting with praiseworthy diligence.

In the Selle case, *supra,* we said that if the public begins a condemnation proceeding that is later abandoned, "the condemnor is liable for any damages occasioned by a deprivation of any use of the land to which it would prudently have been put." I think the word "prudently" furnishes the answer to the question posed by this case. When the landowner is put on notice that his land is to be taken he must act with prudence rather than with complete disregard of the condemnor's intentions. He should at least make some inquiry as to when the actual taking is to occur. If he is assured by the condemnor that he has time to plant and harvest a crop, then he is free to plant and should receive compensation if his land is actually taken before the crop can be gathered. But if the landowner's inquiry discloses that he will not be able to harvest his crop then he should not be permitted to enhance his damages by planting and cultivating a crop that will never reach maturity.

It might be answered that even after the landowner has prudently decided not to plant his land the Highway Commission might still abandon the project and thereby cause the property to lie fallow for a year. This suggestion presents no difficulty whatever. As the majority point out, as soon as the right-of-way is staked out the landowner is entitled to enjoin any further proceedings until the condemnor makes a bond to secure the ultimate payment of compensation. But deprivation of the use of the land is equally a taking, and I can think of no reason why the bond in question might not be made broad enough to cover the rental value of the property if the condemnor failed to complete the condemnation and thereby caused the landowner an unnecessary loss.

At the trial the jury were instructed that they might consider the value of the crop in arriving at their award of compensation. I think the instruction should have been that this value might be considered only if the landowner acted with reasonable prudence in planting the crop after having notice that his land was to be taken. I would therefore reverse the judgment and remand the cause for a new trial.

HOLT, J., joins in this dissent.