ARKANSAS STATE HIGHWAY COMMISSION *v.* CORDES MOTORS, INC., Ralph Crumpacker, Mortgagee and Mozelle Crumpacker, Mortgagee, Barnhill of Springdale, Inc., and First State Bank, Mortgagee, Elby Short and Hazel Short, His Wife

93-559 867 S.W.2d 178

Supreme Court of Arkansas
Opinion delivered December 13, 1993

---

*Robert L. Wilson*, Chief Counsel; *Maria L. Schenetzke*; and *Treeca J. Dyer*, for appellant.

*Lisle Law Firm, P.C.*, by: *Joe B. Reed*, for appellee.

ROBERT H. DUDLEY, Justice. On December 12, 1988, the Arkansas State Highway Commission filed three separate complaints and declarations of taking in order to widen Highway 68 in Springdale from four to five lanes. The State sought to take the fee title to the land necessary for the enlargement from appellees, Cordes Motors, Inc. and its mortgagee; Barnhill of Springdale, Inc. and its mortgagee; and Elby and Hazel Short. The State pleaded that it already had a right of way that extended forty feet from the center line of the highway and should be required to pay damages only for the land taken that was more than forty feet from the centerline. The three property owners answered and asserted that the State's right of way extended only eleven feet from the centerline, and they should be compensated for any land taken that was further than eleven feet from the center line. The three cases were consolidated for a bifurcated trial. In the first phase the trial judge found that the State had a right of way that extended fifteen feet from the centerline, and the State must compensate the landowners for all land taken that was more than fifteen feet from the centerline. In the second phase the jury assessed the damages for the land taken that was more than fifteen feet from the centerline. We reverse and remand.

Before addressing the merits of this case, an overview of the history of county roads, the applicable statutes, and the case law is warranted. Many of the early county roads were acquired by prescriptive right, and some were acquired by donation without the donation instrument being recorded. Consequently, record title to county roads has often been lacking.

Section 14-298-121 of the Arkansas Code Annotated of 1987, which originated almost a century ago as Act 200 of 1899, granted the power to county courts to condemn highway rights of way. With this power, record title to roads could be obtained. However, the 1899 Act was criticized and challenged early on because it was ostensibly defective, in that it made no provision

for the giving of notice to the landowner whose property was being taken. *See Arkansas State Highway Comm'n v. Cook*, 233 Ark. 534, 345 S.W.2d 632 (1961); *Sloan v. Lawrence County*, 134 Ark. 121, 203 S.W. 260 (1918). Notice is essential because the landowner is entitled to a hearing upon the issue of compensation. This court saved the Act from invalidity by holding that the actual entry upon the land supplies the required notice to the landowner. *See Sloan*, 134 Ark. at 131-32, 203 S.W. at 263. In *State Highway Commission v. Holden*, we said the taking was not complete until the notice by entry was given. 217 Ark. 466, 464, S.W.2d 113, 115-116 (1950). In *Sloan*, we held that the landowner was given notice when there was a physical entry pursuant to the county court order of taking, and the statute of limitations begins to run only after such notice. 134 Ark. at 131-63, 203 S.W. at 262-32. After *Sloan*, we set about the task of determining the specific facts that would constitute notice. *See Cook, supra*, 233 Ark. at 536, 203 S.W.2d at 633.

■■ The burden is on the condemnor to prove notice. *Arkansas Highway Comm'n v. Anderson*, 237 Ark. 857, 376 S.W.2d 662 (1964). However, proof that notice was given to an owner will constitute notice to all subsequent owners. *Arkansas State Highway Comm'n v. Jerry*, 241 Ark. 591, 408 S.W.2d 864 (1966). We have said that notice can be established by:

> Entry on the land under the authority of the order, or by the landowner filing a claim for right of way included in the order, or by any act tantamount to a showing that the landowner knew of [a county court order condemning the land] or had notice of facts, which, if reasonably pursued, would have resulted in such notice.

*Jerry*, 241 Ark. at 594, 408 S.W.2d at 865. Regardless of the expansive language of the last phrase quoted above, we refused to find notice in that very case even though the State dug a borrow pit in an adjoining tract because we determined that "this would not lead a prudent person to suspect that the right of way was widened in the tract involved." *Id.* at 595, 408 S.W.2d at 866. Similarly, in *State Highway Commission v. Dobbs*, 232 Ark. 541, 340 S.W.2d 283 (1960), we said, as explained in *Jerry*, notice by widening a road at one place does not constitute a notice of taking on the same road at another place.

A more accurate summary of our case law is to say that the holdings of all our cases are in harmony and require a showing of either a prior filing of a claim for compensation, or an actual entry on the land that constitutes a substantial invasion; an entry that is physical and visible and would alert an ordinary person to the fact that the government is exercising dominion over the property. *See Arkansas State Highway Comm'n v. French*, 246 Ark. 665, 439 S.W.2d 276 (1969); *Arkansas State Highway Comm'n v. Montgomery*, 237 Ark. 857, 376 S.W.2d 662 (1964); *State Highway Comm'n v. Holden*, 217 Ark. 466, 231 S.W.2d 113 (1950). For example, we held there was notice when the proof showed that the State had moved a utility pole, moved ditches and tiles, and expanded the actual paved area of the road, *Montgomery*, 237 Ark. at 860-61, 376 S.W.2d at 664-65, and when the State constructed a road on a part of the easement, *Cook*, 233 Ark. at 537, 345 S.W.2d at 634, but we held there was no notice of an expanded right of way when the original road was built before the county court order was entered. *Arkansas Highway Dept. v. Cook*, 236 Ark. 251, 254, 365 S.W.2d 463, 464 (1963).

In 1963, the General Assembly passed Act 185 (codified at Ark. Code Ann. § 14-298-122 (1987)), for the purpose of "establish[ing] a rule defining what actions have supplied the requisite notice." The act codified our holdings into legislation. In 1965, the General Assembly provided that, prospectively, service of process must be had by a condemnor. *See* Ark. Code Ann. § 14-298-120(f)-(g) (1987). While the 1965 act solves the notice problems for land condemned after that date, the old procedure still haunts us for land taken before that time. *See* Robert R. Wright, *Recent Developments in Eminent Domain in Arkansas*, 19 Ark. L. Rev. 121, 136 (1965-66).

The facts of the case at bar are straightforward. Prior to 1946, there was a dirt road that crossed meadows, orchards, vineyards, and gardens and was then known as the Springdale-East road. Record title to the right of way is not shown to have been in Washington County. On January 31, 1946, the County Court of Washington County entered an order condemning a right of way that extended forty feet from the centerline of the road. There is no proof of service of notice of the order of condemnation that would commence the statute of limitation on claims

for damages. In reality, the landowners may well have received a benefit, rather than suffered a damage, by the taking and paving of the dirt road and, as a result, may have chosen not to file suit. *See Arkansas State Highway Comm'n v. Dobbs*, 232 Ark. 541, 544, 340 S.W.2d 283 (1960). There was also testimony indicating that the landowners might have donated the right of way in order to get a paved road, and the donation instrument was simply not recorded, but the fact remains that the Commission did not prove service of notice. In December 1946, the road was taken into the state highway system as Highway 68, and in 1947, State Highway Commission construction job number 9219 was commenced on the road. The Commission has retained its plans for the project and introduced them into evidence at the trial. The plans and the testimony of Ron Johnston, a Commission employee, show that the ditching, culverts, and fencing near the dirt road were to be moved out to correspond with the forty-foot right of way line described in the county court order. By themselves, the plans do not prove that the work was done. However, subsequent surveys do show that the ditching, culverts, and fencing were moved to correspond with the forty-foot right of way line.

In *Montgomery, supra*, a case remarkably similar to the one at bar, the Highway Commission's plans showed that ditches and culverts were to be moved from the disputed area. Witnesses testified that the ditches and culverts were in fact moved from the area and a utility pole was moved onto it. We held that proof of such physical and visible action was sufficient to put the landowner on notice that the condemnation proceeding was completed and the statute of limitations had started to run. *Montgomery*, 237 Ark. at 861, 376 S.W.2d at 665.

This case is governed by *Montgomery*. The landowners argue that the Commission's proof is inadequate to come within the cited case because the Commission's witness "could not tell for sure from the construction plan whether the fences were moved or not." The argument fails for two reasons. First, the landowners in their brief admit that "the only testimony concerning what took place at the time of the original construction plan in the present case was that ditching and culverts were moved. . . ." However, the moving of the fences and ditches to the right of way line, standing alone, is sufficient notice under *Montgomery*.

Second, while it is true that the witness Ron Johnston could not tell from the Commission's plan whether the fences were moved, he testified, from examining later completed surveys, that the fences were in fact moved out to the edge of the forty-foot right of way line. Under our holding in the *Montgomery* case, the trial court erred in ruling that moving the ditching, culverts, and fencing out to the edge of the forty-foot right of way line did not constitute notice.

 Even if the ditches, culverts, and fencing had not been moved in 1947, there was another visible and physical entry in the late 1970's or early 1980's that, as a matter of law, was sufficient to give notice. At that time the Commission increased the width of the original road from eleven feet to fifteen feet. The trial court found that the result of this four-foot enlargement of the paved road was to give notice that the Commission claimed this four feet. That ruling was in error. The physical and visible entry gave notice that the Commission was claiming the land described in the condemnation order, and not just to the extent actually occupied. If the trial court's ruling were correct, the validity of the public easement would rest on the uncertainties of oral testimony, rather than upon the metes and bounds descriptions set out in the order of condemnation. *Cook*, 233 Ark. at 537, 345 S.W.2d at 634. In addition, our holding is corroborated by other facts. In 1984 or 1985, the Commission placed "No Parking" signs some twenty-one feet from the centerline of the roadway. Again, such was a physical and active entry that was clearly visible to the landowners, but we need not decide if that fact was sufficient for notice. Also, private surveys that were completed for the landowners over a period of years reflected a forty-foot right of way, and surveyors' iron pins were in place marking the right of way line at forty feet from the centerline, and the landowners' deeds excepted the highway right of way. Finally, an official of the Commission sent one of the landowners a letter asking him to remove a sign that encroached on the right of way. In sum, the landowners clearly had physical and visual notice that their property was taken, and they did not seek damages within the period of limitation.

Reversed and remanded for further proceedings consistent with this opinion.