ARKANSAS STATE HIGHWAY COMMISSION *v.* PARTAIN.

4-4180

Opinion delivered February 3, 1936.

*Carl E. Bailey,* Attorney General, *Thos. Fitzhugh,* Assistant, and *Neill Bohlinger,* for appellant.

*Miles, Armstrong & Young* and *Partain & Agee,* for appellees.

SMITH, J. Appellee Partain brought this suit against the Arkansas Highway Commission, and for his cause of action alleged the following facts. He owns and resides upon certain lots having three hundred feet frontage on Jefferson Street in the city of Van Buren. Just east of Jefferson Street and one block from said street, U. S. Highways 64 and 71, and State Highway 45 are routed on Broadway Street, coming across the Arkansas River from the city of Fort Smith. Such highways have been located by the State Highway Department through the city of Van Buren, from the end of the bridge over the Arkansas River, across or above the tracks of the Missouri Pacific Railroad Company. It is contemplated by the State Highway Department to build and construct, and to cause to be built and constructed, an overpass or viaduct across the tracks of the railroad company in said city of Van Buren leading from and off the bridge across the Arkansas River and along Jefferson Street, adjacent to Partain's residence. The petitioner alleged that the construction of this viaduct or overpass would destroy the value of his property, and that this was about to be done without compensating him for the damages he would sustain.

A temporary restraining order was granted. Pending final submission of the cause, certain citizens and taxpayers of Van Buren who are the owners of real estate in the Fort Smith and Van Buren Bridge Improvement District filed an intervention in which they adopted the allegations of Partain's petition and joined with him in the prayer that the construction of the viaduct or overpass be restrained. They alleged, as an additional reason why this should be done, that the construction of this viaduct in the manner proposed would destroy the value of the bridge across the Arkansas River, which the improvement district had constructed for use by railroads and street car lines. It was alleged that the bridge had been built to accommodate railroad and street car traffic at a cost far greater than would otherwise have been required, and that this was done pursuant to the acts of the General Assembly, authorizing the construction of the bridge. Intervenors alleged that the commissioners

of the bridge improvement district were without authority to make any contract or to enter into any arrangement having that result.

Upon the final submission of the cause the relief prayed by the original petitioner and the interveners was granted, and the State Highway Commission, and the contractor to whom the construction contract had been awarded, were permanently enjoined and restrained "from the construction of a viaduct or overpass on Jefferson Street in the city of Van Buren, Arkansas, along side or by the property and homes of the plaintiff and the interveners herein described, or along and over the property of the Fort Smith and Van Buren Bridge District or into, or on, the bridge of said district."

At the trial from which this appeal comes, there was offered in evidence an ordinance of the city of Van Buren which provided "that Jefferson Street between First and Fourth streets, in the city of Van Buren, Arkansas, be and the same is hereby closed, and is dedicated to the construction and use of an overpass to be constructed by the Arkansas State Highway Commission."

There was also offered in evidence an agreement between the commissioners of the bridge improvement district, and the State Highway Commission which recites the purpose and intention of the Commission to construct the viaduct in question and the necessity therefor. In this agreement the bridge district grants to the Highway Commission the right "to construct, complete and maintain at its sole expense viaduct and appurtenances as designed by the Commission's engineer and approved by the U. S. Board of Public Roads." The Commission agreed to construct and maintain the viaduct at its own cost. The Commission also agreed to indemnify and save the district harmless for "damages, loss or destruction either suffered or caused to any person or to any property incident to the construction of the viaduct." It thus appears that while the city has authorized the erection of the viaduct in one of its own streets, it is proposed to have it done at the expense of the State Highway Commission.

Counsel for the appellant Highway Commission say that the proposed improvement is in effect a change of the grade of a street in the city of Van Buren which the council has authorized, and we are cited to the case of *Eickhoff* v. *Street Improvement Dist. No. 11 of Argenta,* 120 Ark. 212, 179 S. W. 367, which holds that the cities and towns have this power. But the same case also held that, while this could be done, yet, if and when done damages resulted to a property owner, the damages must be paid by the city.

There was offered in evidence a resolution adopted by the Highway Commission making provision for the payment of those damages reading as follows: ''Motion by Mr. Murphy, seconded by Mr. Black, that funds now in the State Contingent Fund to the amount of fifteen thousand dollars ($15,000) are hereby allocated to job No. 4176, U. S. P. W. Proj. N. R. M. 216-C, for the purpose of paying any damages to privately owned property adjacent to the project which the State might be adjudged to pay by reason of the construction of said project. Motion unanimously carried.''

Our attention is also called to act No. 160, of the Acts of 1935, page 438, § 1, reading as follows: ''The Arkansas State Highway Commission is hereby authorized, empowered and directed to allocate and use such part of the sum of $15,000 remaining in its custody or under its control from unused Federal funds, as the said Commission may find necessary for the erection of the Van Buren viaduct, or in securing any rights or title to property or paying damages in connection therewith; provided, nothing herein shall be construed as giving to the Arkansas State Highway Commission the power to condemn private property in connection with the building of said viaduct. That, if for any reason said project fails, the said Commission may make such other allocation of said sum of money as it may deem proper.''

But, notwithstanding this resolution and this act of the General Assembly, it appears that only $7,000 of this money is now available to pay the prospective damages. This appears from a letter written by the secretary of the Highway Commission to petitioner Partain.

So far as the question of the probable damages and the compensation therefor is concerned, the case is not unlike that of *Campbell* v. *Arkansas State Highway Commission,* 183 Ark. 780, 38 S. W. (2d) 753, in that a viaduct was constructed in one of the streets of Newport, which it was alleged occasioned damages to real estate similar to those which the parties here allege that they will sustain. The fact is stated in the opinion in that case that the State Highway Commission did not institute condemnation proceedings, but that the suit was brought by the damaged property owners after the construction of the viaduct. We held that the construction of the viaduct in the street adjacent to the owners' property was a taking thereof, to the extent that its value had been destroyed, and that damages to compensate that destruction might be recovered. It had not then been held that the State Highway Commission as an agency of the State could not be sued. *Ark. State Highway Commission* v. *Nelson Bros.,* 191 Ark. 629, 87 S. W. (2d) 394.

It is insisted that the resolution of the State Highway Commission, and the act of the General Assembly above quoted show the intention and the ability of the Highway Commission to pay these damages. This is not sufficient. The property owners cannot be required to accept a claim for unliquidated damages as compensation for their property. There is authority in the law whereby the court, in which condemnation is prayed, may require a deposit in court of a sum of money sufficient to pay any and all damages which may reasonably be assessed; and the deposit must be in the registry of the court where the damages will be assessed, which in this case is the circuit court of Crawford County. This deposit is in effect the payment, and in advance, which the Constitution requires as a condition precedent upon which the property must be taken. Such an order of the court and a deposit pursuant thereto places the fund in the hands of and subject to the control of the court. The showing that there is or was money in the State Treasury in a sum sufficient to pay the damages does not suffice. This money is not subject to the order of the court. It might be that the money would be otherwise used, and in this case a por-

tion of it has been devoted to another purpose and the whole of the $15,000 is no longer available to pay the damages. This is especially true here as the court could not order the disbursement of this money until it had been deposited and made subject to its order and its judgment. *Arkansas State Highway Commission* v. *Nelson Bros., supra.*

By § 65 of act 65 of the Acts of 1929, page 334, it is enacted that: "The State's right of eminent domain may be exercised by the State Highway Commission in the same manner as in the case of railroads, telegraph and telephone companies for the purpose of condemning land for highways, bridges, and their approaches, for securing building material, and for any other use which said commission may, under the laws of this State, require property for the carrying out of enterprises entrusted to its supervision; but without the necessity of making a deposit of money before entering into possession of the property condemned."

This act is a declaration of the State's ancient right of eminent domain (§ 23, art. 2, Constitution), but in so far as it permits the State Highway Commission to enter into the possession of private property, without first compensating the owner for the damages sustained by actual payment of the amount of such damages, or by a deposit of money covering them, in the court where this right is sought to be exercised, is violative of § 22 of art. 2 of the Constitution. This section of the Constitution provides "that the right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

The property owner has no cause of action which may be maintained to recover his damages against the State. *Arkansas State Highway Commission* v. *Nelson Bros., supra.* If he permits an agency of the State, such as the Highway Commission to appropriate his property he is limited to such relief as the State may provide. For the loss of his property, or for damage to it which he sustains, this act gives him an unliquidated demand against the State, to be satisfied at the pleasure of the

State. This may not be done under the holding of this court in the case of *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. (2d) 993, where we said: ''The State was without power to take possession of the bridge without compensating the owners therefor, and the judgment of condemnation could not have been enforced until the compensation to which it adjudged the owner to be entitled had been paid.'' This case arose and was decided long after the passage of the act of 1929 above referred to.

It is immaterial what agency, whether State or municipal, proposes to take, appropriate, or damage private property for any public use; it may not be done except upon compensation to the owner for the damages which the taking occasions.

There was therefore no proper tender as required by the Constitution and laws of this State as a condition upon which the property might be taken or damaged prior to the payment of damages, and this taking was therefore properly enjoined.

The State Highway Commission insists, however, that it has been and is now ready, willing and able to compensate the owners for their damages when the city ordinance above referred to has been executed. If this be done in the manner above indicated, the overpass or viaduct may be erected.

This is true unless the interveners have shown cause why it should not be done, even though the property owners are compensated for their damages.

The original act, pursuant to which the bridge was constructed across the Arkansas River, provides that: ''The Commissioners shall have power to grant a right-of-way over said bridge to any public utilities upon such terms as the Commissioners shall determine; provided, however, that the concessions which may be granted to public utilities shall not interfere with the reasonable use of such bridge as a public highway.'' *Shibley* v. *Ft. Smith & Van Buren Bridge District*, 96 Ark. 410, 132 S. W. 444; *Nakdimen* v. *Ft. Smith & Van Buren Bridge Dist.*, 115 Ark. 194, 172 S. W. 272; act No. 119 of the Acts of 1909, page 325.

The showing is made that the construction of the proposed viaduct will render the bridge unavailable for use by steam railroads and for street cars as well. It is shown also that the bridge was never used by a steam railroad, but was at one time used by a street railroad. This latter use has now been abandoned.

The implication is clear, if not undisputed, that the building of the viaduct has become a necessary adjunct to highway travel. It is designed and planned to facilitate and make safe highway traffic on National and State highways across the river and the railroad tracks in Van Buren. This is the primary purpose of the bridge. The grant to the utilities of the right to cross the bridge is a secondary purpose, and is not to be made at all, if such grant interferes with the reasonable use of such bridge as a public highway. To make the use of the bridge as a highway secondary or subservient to a possible use by a utility would be, as counsel for the State Highway Commission says, a complete reversal of the restrictions placed upon the Commission by the act itself; and, instead of having a grant to the utility made subject to highway use, we would have the use of the bridge restricted in order that a utility may enjoy its use.

It appears that the State Highway Commission at its own, and at a very great cost is preparing to increase the primary uses for which the bridge was constructed and to safeguard the traveling public in this way, and we think the consent of the Commissioners of the bridge improvement district is not beyond the powers conferred upon them by law.

It follows therefore that the State Highway Commission may build the viaduct pursuant to the city ordinance provided it first makes compensation to the property owners who will be damaged by that action in the manner herein indicated; and while the decree herein appealed from must be affirmed, that action is without prejudice to subsequent proceedings conforming to this opinion.