Arkansas State Highway Commission v. T. Q. French

5-4875                                    439 S.W. 2d 276

Opinion Delivered April 14, 1969

*Thomas B. Keys & Virginia Tacket* for appellant.

*Guy H. Jones & Phil Stratton* for appellee.

Conley Byrd, Justice.    The Arkansas State Highway Commission appeals from a Chancery Court order holding that appellee T. Q. French is the owner of a strip of land 10 feet in width, adjacent to the east side of Highway 65 in the town of Bee Branch, Arkansas. The Highway Department claims the land by virtue of a 1928 county court condemnation order fixing the right of way 40 feet in width either side of a center line. For reversal, the Highway Department relies upon the following points:

1.    The trial court erred in not dismissing French's injunction action because the undisputed testi-

mony showed that he had knowledge of the Highway Department's claim for more than one year (Ark. Stat. Ann. § 76-917);

2. The trial court was in error in ruling that French had no notice of the taking by the county court order;

3. The trial court erred in ruling that French was not estopped by his acquiescence and actions indicating acquiescence in the state's claim to the strip of ground upon which the state acted to its detriment in letting a contract for construction.

The record shows that subsequent to the county court condemnation order the Highway Department graded and graveled Highway 65 through Bee Branch, pursuant to job no. 843. Sheets no. 8 and 9 of the plans for job no. 843 show a right of way 40 feet in width either side of a center line up to station 608 and 30 feet either side of a center line from station 608 to approximately station 623 plus 88.7. Quitman Road is shown as being at station 610 and the post office, at that time, as being between stations 615 and 620. French's store is between station 608 and the post office. The paving of Highway 65 in Bee Branch was done in 1934, job no. 8178. Sheet no. 23 of job no. 8178 shows right of way 40 feet in width either side of a center line up to station 608. The right of way from station 608, to the post office, the latter being at station 619+26.8, is shown as being 30 feet either side of a center line except for the portion immediately in front of the post office which is shown as being 26 feet west of the center line. The latter sheet also shows that the pumps on the G. W. French filling station are located on the highway right of way as drawn by the plan.

Thomas Q. French testified that he was 64 years of age and that he was working for his father when High-

way 65 was put through in 1928—that his father had been in business there ever since 1900 and that the gasoline pumps were put in before the highway was graveled. According to Mr. French there was an existing road through the town of Bee Branch at the time the highway was graveled in '28. Following the paving of the road in 1933 or '34, he built a concrete apron in 1938 out to the roadway. About a year before the filing of the suit the highway department notified him that his pumps were on the right of way and requested him to move the same. In answer to questions by the court he testified as follows:

> "Q. Now you have stated that Mr. Elledge's letter to you dated June 19, 1967 represented substantially what you and he had discussed, you did then at one time agree with him that you would move these two independent pumps farther east?

> "A. I told him I would, but I never did say when, I didn't tell him exactly when.

> "Q. Did that have anything to do with one of the inducements for the Highway Department to make a decision to keep the highway going through town rather than having it bypass town?

> "A. You mean—

> "Q. Was that an inducement to the Highway Department to help them decide to go through town?

> "A. Not at that time, they had already decided.

> "Q. Well, what did you imply by your agreement with the Highway Department that you would move these two pumps east? What were your intentions about it?

"A. Well, I was trying to hold them there and see what I could do. I didn't know whether they owned the right of way they were talking about and I finally checked that they didn't."

Mr. French said he did not know about the county court condemnation order until two months before the trial nor was he aware of any entry ever having been made on his property.

Witnesses on behalf of the Highway Department testified that Mr. French had promised to move the pumps and that in reliance thereon they let a contract to McGeorge Construction Company in which they obligated federal funds, after certifying that the right of way had been cleared of all obstructions. The State's witnesses did not contend that notices had been served in connection with the entry of the county court condemnation order or that claims for compensation had been filed by Mr. French or his father, a predecessor in title. These witnesses also testified that the highway was originally programed to bypass Bee Branch but, at the request of the citizenry through appellee's present counsel, then an employee of the Highway Department, a meeting was held at Bee Branch. At that time the Highway Director explained that the only way the highway could be changed to come through Bee Branch was for the people to pay for the removal of all utilities, buildings and all right of way. Following that meeting, however, the Highway Department worked out an arrangement whereby the highway would go through Bee Branch and all the additional right of way required for the construction would be taken from the west side of the highway. Pursuant to this plan, an additional 20 feet was acquired on the west side of the highway and the Highway Department admittedly paid for acquisition of this property and removal of the obstructions therefrom.

Subsequently another meeting was held between Mr. French and Mr. Gray, an employee of the Highway

Department, at the home of Hulen McKim. Mr. McKim says that the discussions centered around a service station on the west side of the road belonging to a Mr. Ethridge. With reference to the meeting at Mr. McKim's home, Mr. Gray testified as follows:

"Well, like I say this meeting was at his house and then in relation to this other service station as Mr. McKim related, but we had worked out a method that was acceptable to the Bureau of Public Roads and our planning division, wherein if we could bring the alignment a little bit further to the west and take the right of way from the west and maintain the right of way that we had on the east that we would construct it through the town with the curb and gutter section, so that is what I went up to discuss with them, and the people involved on the west side we contacted as many of them as we could that day and told them what our proposition would be and I talked to Mr. French and told him how the situation would affect him and I advised Mr. French that his pumps were encroaching and that they would have to be set off of the right of way. Mr. French advised me that he understood that and that wasn't any concern if we were going to get the Highway through Town because he was planning at that time to acquire additional property and he was concerned about the 92 that came in there because he had plans for some sort of business there."

Mr. French acknowledges the meeting with Mr. Gray at the McKim home and in answer to a question as to what they talked about said:

"Well, he was trying to get a right of way through Bee Branch, and he wanted to take ten feet on each side, he said, of the highway. Well, he couldn't do any good on the east side getting people to go along with him, so he came up there and said 'I have de-

cided to take twenty feet on the west side of me and pay all of the property owners for their properties.' "

POINT 1. Appellant argues that French knew more than a year prior to the filing of the injunction suit that the Highway Department was claiming the right of way involved and that because of this knowledge French is barred by the one year statute of limitations set out in Ark. Stat. Ann. § 76-917 (Repl. 1957). We find this contention to be without merit. See *Greene County* v. *Hayden,* 175 Ark. 1067, 1 S.W. 2d 803 (1928), and *Hot Spring County* v. *Fowler,* 229 Ark. 1050, 320 S.W. 2d 269 (1959). As we read these decisions the one year statute of limitations does not begin to run against a property owner until he is served with notice by legal process or until an entry is made by the condemning agent.

POINT 2. In *Arkansas State Highway Commission* v. *Anderson,* 234 Ark. 774, 354 S.W. 2d 554 (1962), we pointed out that property could not be condemned without first giving the land owner notice so that he could have his day in court on the issue of compensation. We there held that the burden of proving that proper notice was given was upon the condemning agency.

Under the record here there was no evidence of any notice by legal process served upon Mr. French or his father. Under these circumstances the Highway Department had the burden of showing an entry upon the French property which would amount to notice. Under the proof here we believe that the Highway Department failed to sustain its burden of proof. The record shows that Bee Branch in 1928 was a town with stores on both sides of the street and with the street running from porch to porch. The further proof is that the pumps in issue here were in existence at the time the highway was constructed and that use of the pumps was not interfered with by the highway construction.

Furthermore the county court condemnation order is typical of the orders entered at that time. The right of way was described as extending from station to station and for a certain distance on either side of the center line, and is unintelligible to any one, except perhaps an engineer, without the aid of the plans and specifications on file in the Highway Department. Had Mr. French seen plans prepared in connection with the jobs 843 or 8178, he would have found that the right of way in front of his business was only 30 feet in width on either side of the center line instead of the 40 feet now claimed by the State. Upon the whole record the evidence preponderates in favor of the Chancellor's findings that Mr. French had no notice either by legal process or through entry.

POINT 3. Under this point, the State argues that appellee along with the other citizens of the town of Bee Branch made overtures to representatives of the Highway Department to secure the routing of the highway through the town instead of around the town as planned by the Highway Department. They contend that at these meetings Mr. French was present, was aware of the State's claim of right to the 10 foot strip, acquiesced in the State's claim and permitted the State to rely upon such acquiescence until the State acted to its detriment by issuing a contract for the highway construction through Bee Branch. In *Watson* v. *Murray*, 54 Ark. 499, 16 S.W. 293 (1891), be held that the burden is upon one who relies upon an estoppel to establish the facts relied upon as creating it.

Without deciding whether the facts upon which the State relies would create an estoppel, we point out that French denied that he knew the Highway Department was claiming the disputed strip. Under this state of the record we are unwilling to hold that the Chancellor's finding contrary to the State's position is against the preponderance of the evidence.

Affirmed.