# ARKANSAS STATE HIGHWAY COMMISSION
## v. Bessie W. COFFELT

74-218                                          520 S.W. 2d 294

### Opinion delivered March 10, 1975
[Supplemental Opinion on Denial of Rehearing June 2, 1975, p. 780-A.]

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Kenneth Coffelt* and *Carl Langston,* for appellee.

J. FRED JONES, Justice. This is an appeal by the Arkansas State Highway Commission from a decree of the Pulaski County Chancery Court enjoining the Highway Commission from closing so-called Coffelt Road where it crosses Highway No. 67 in connection with improvements on Highway 67.

On appeal to this court the Highway Commission relies on the following points for reversal:

"The trial court erred in finding that there was no notice of the county court order.

The trial court erred in finding that appellee was the title holder in fee of at least 20 feet of the south part of Coffelt Road, which crosses U. S. Highway #67.

The trial court erred in finding that appellant had never entered or attempted to stop the flow of traffic across Coffelt Road to the extent that such entry would amount of [sic] notice that the appellant was claiming said road in fee."

The appellee, Bessie W. Coffelt, has cross-appealed and for reversal of the chancellor's decree on cross-appeal she relies on the following points:

"The trial court erred in dissolving the Temporary Injunction entered August 23, 1972, without the Arkansas Highway Commission affirmatively requesting permission to make a deposit and comply with Per Curiam Order of September 25, 1972.

To comply with Per Curiam Order of Supreme Court of September 25, 1972, Highway Commission must request affirmative relief.

With respect to compensation due process requires that the landowner be given reasonable notice of, and an opportunity to be heard in the proceedings."

The facts, as they appear from the record in this case, are as follows: On July 12, 1955, Horace D'Angelo and his wife owned the land involved in this case and through which the then proposed Highway 67 would run. On that date Pulaski County purchased from the D'Angelos a perpetual easement for Highway 67 over the right-of-way area here involved. The granting clause in the deed from the D'Angelos provided:

". . . do hereby grant and convey unto the said Pulaski County, Arkansas, and unto its successors and assigns forever, a perpetual and exclusive easement for the right of way of State and U. S. Highway No. 67 through and over the following described lands lying in Pulaski County, Arkansas as shown on attached sketch marked Exhibit 'A'."

Following the granting clause and description the deed then provided as follows:

"This conveyance is made for the purposes of a freeway and adjacent frontage road and the grantor hereby releases and relinquishes to the grantee any and all other abutter's rights including rights appurtenant to grantor's remaining property in and to said freeway, provided, however, that such remaining property shall abut upon and have access to said frontage road which will be connected to the freeway only at such points as may be established by public authority.

To have and to hold the same unto the said Pulaski County, Arkansas and unto its successors and assigns forever, with all appurtenances thereto belonging."

On July 25, 1955, the Pulaski County Court entered an order reciting as follows:

"Now on this day there comes on for consideration the

matter of right of way damages in connection with the cost of the right of way on the above captioned road project.

And the Court being well and sufficiently advised on all matters of law and fact herein doth find that Pulaski County, Arkansas has entered upon the property of the herein named property owners under authority conveyed by easement deeds executed by the several property owners to said county and that the property acquired and the value thereof expressly including damages to their remaining lands is as follows and said property owners have agreed to accept the following allowance in full settlement of their claims for damages filed in this Court in this matter."

This court order then set out the various amounts to be paid the landowners, including the D'Angelos, and the order concluded as follows:

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED BY THE COURT that the above named property owners recover the amounts shown as total damage and that such allowance is to be paid by Pulaski County, Arkansas from funds made available by the Arkansas State Highway Department which allowances expressly include damages to their remaining lands located outside the right of way."

On September 8, 1955, the D'Angelos sold their entire tract of land consisting of 240 acres, more or less, to Kenneth Coffelt by warranty deed. Following the legal description of the property, this deed provided as follows:

"[S]ubject to an easement for a road designated as Pickthorn Lane that runs across the North side of said property, if said Lane encroaches in any manner upon the above described property;

Also subject to a perpetual easement for a right-of-way for State and U. S. Highway No. 67 through and over said land, which easement and right-of-way is par-

ticularly set forth and described in an instrument described as 'Easement Deed' dated the 12th day of July, 1955, executed by Horace D'Angelo and his wife, Eleanor B. D'Angelo, to Pulaski County, Arkansas, which said deed is recorded in Book 578 at Page 437 of the Deed Records of Pulaski County, Arkansas. The highway right-of-way *excepted from this conveyance* and described in the Easement Deed above referred to contains 27.92 acres more or less in permanent right-of-way and 1.508 acres more or less in temporary right-of-way." (Emphasis added).

This deed also contains a warranty clause as follows:

"And we hereby covenant with the said Kenneth Coffelt that we will forever warrant and defend the title to said lands against all claims whatsoever except the easements set forth in the *granting clause*, and the rights of Herman Berkhead, Jr., a tenant by the month, who is now occupying the tenant house on said property." (Emphasis added).

On December 16, 1955, the Pulaski County Court entered an order finding that for the purpose of constructing, improving and maintaining U.S. Highway No. 67, the highway should be a controlled access facility for the reason that traffic conditions then and those contemplated and forecast for the future justify such special facility, "and therefore the owners or occupants of abutting land shall have no right or easement of existing, future, or potential common law or statutory rights of access, or ingress and egress to, from, or across this facility to or from abutting lands, except at such designated points at which access may be permitted upon such terms and conditions as may be specified from time to time by the Arkansas State Highway Commission." The county court then found that under the provisions of said Act 383 of 1953 the said right-of-way should be acquired in fee simple. The county court order then provided as follows:

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED BY THE COURT that:

1. The right of way for the Jacksonville Air Base-North Road, U.S. Highway No. 67, be and the same is hereby condemned, located and changed in accordance with the description hereto attached and as shown on the right of way sketch map hereto attached, and that the title to said lands in fee simple absolute is hereby vested and confirmed in Pulaski County, Arkansas.

2. That the said Jacksonville Air Base-North Road, U. S. Highway No. 67, be and is hereby designated and established a controlled-access facility under the authority of and as provided by Act 383 of the 1953 General Assembly of the State of Arkansas, and that the owners or occupants of abutting and adjoining lands shall have no right or easement of existing, future, or potential common law or statutory rights of access, or ingress and egress to, from, or across this facility to, from, or across abutting lands, except at such designated points and places at which access may be permitted by the rules and regulations of the Arkansas State Highway Commission which Commission is hereby permitted to regulate, control and designate such access, light, air or view and points and places of ingress and egress.

3. That the right of way herein described has been obtained by Pulaski County, Arkansas for the public use and benefit and for this purpose the property rights acquired under this order be and they are hereby transferred to the Arkansas State Highway Commission to construct and maintain said road, being a controlled-access facility.''

Kenneth Coffelt subsequently transferred title by quitclaim deed to the appellee, Bessie W. Coffelt. On August 23, 1972, Mrs. Coffelt filed the present action in chancery court praying that the appellant and its contractors be temporarily restrained from interfering with the existing exit off of U.S. Highway 67 and its east frontage road abutting the property owned by her, and that upon final hearing the order be made permanent, and praying that the Highway Commission be required to deposit estimated damages into the registry of the court if it proposed to condemn the property

right of the appellee in the exit in question. The complaint alleged that the appellee's land had a one-fourth mile frontage along U. S. Highway 67; that the right-of-way was acquired by easement deed to Pulaski County by the appellee's predecessor in title; that the exit in question was from the two north-bound lanes of traffic on U.S. Highway 67 to a two-lane frontage road running directly in front of appellee's property, and that the closing or removal of said exit would deprive the appellee of a property right to her damage in the amount of $46,375. The complaint also alleged representations made as to the permanency of the exit. A temporary injunction was entered by the trial court as requested in the complaint.

On September 6, 1972, the appellant filed its answer denying most of the allegations in the complaint; denying the appellee's fee ownership in the right-of-way, and denying that the appellee would be deprived of access from the main travel portion of the highway to the frontage road upon which the appellee's property abuts.

On September 18, 1972, the appellee filed a motion asking the court to require the appellant and its contractors to deposit $46,375 before they tore out ramps, exits or entrances to the highway on the access road abutting appellee's property, or the closing of Pickthorn or Coffelt Road. The motion alleged that to permit the tearing out of the ramps and to close Coffelt Road without making deposit subject only to the orders of the court, was taking her property without compensation in violation of the State and Federal Constitutions.

On September 18, 1972, the chancellor dissolved the temporary injunction previously ordered and recited retention of jurisdiction for determination "upon permanent hearing" of what damages, if any, should be awarded the appellee.

On September 19, 1972, the chancellor denied the appellee's ₁motion for deposit of estimated damages, whereupon, the appellee filed notice of appeal to this court and on September 25, 1972, this court entered its order reciting as follows:

"The temporary restraining order entered by the Chancery Court on August 23, 1972, is reinstated and shall remain in effect *until this case is disposed of or until* the appellees have either filed an eminent domain proceeding or shall have deposited an adequate amount (to be determined by the chancery court) to compensate the appellant for any damages or compensation to which she may be found to be entitled upon final adjudication of the issues between the parties." (Emphasis added).

On September 29, 1972, the appellee amended her complaint alleging that Coffelt Road intersects Highway 67 and that such crossover constituted a fixed property right of the plaintiff; that she is the owner of the fee title thereto; that said crossover was the only means by which she could get from her property on one side of Highway 67 to the other side; that the Highway Commission was planning to close said Coffelt Road where it crossed Highway 67; that the Highway Commission had agreed to build an overpass at said crossing, and that if the Highway Commission elected to condemn said crossing by eminent domain, it should be required to deposit the sum of $285,000 as just compensation for the taking.

On September 29, 1972, the chancery court entered an order restraining the appellant and its contractors from interfering in any manner with Coffelt Road crossing and setting the matter for hearing on the merits for October 3, 1972. On October 18, 1972, the Highway Commission filed its answer to amendment to the complaint denying the allegations set out in the amendment and stating that the closing of Coffelt Road was for the purpose of diverting and rerouting traffic for the safety of the public, and that such action did not constitute a taking of any compensable property right held by the plaintiff.

On August 22, 1973, the appellee amended her amendment to the complaint alleging that she was the fee owner of the Coffelt Road crossing and also held a prescriptive right of ownership along with all other members of the traveling public to said crossing. She alleged that the Coffelt Road crossing was a county road maintained by the county, being a

blacktop road with a 40 foot right-of-way over which school bus and mail routes were being operated and had been operated for a quarter of a century, and that the original and exclusive jurisdiction of said road rests with the County Judge. She alleged that the Highway Commission has no right to interfere with the Coffelt Road crossing under any proceedings because it had not applied to the county court for permission to so interfere with the crossing and, no order had been entered by the county granting such permission. She alleged that the county court is given exclusive jurisdiction of the closing under its exclusive jurisdiction relating to county roads under Section 28 of Article 7 of the State Constitution. The appellee further alleged that "Even the circuit court could not entertain a condemnation plea by the appellant to take the road or crossing."

On April 17, 1974, the chancellor entered a decree which, among other things, found the appellee to be the holder in fee subject to the easement of Pulaski County, Arkansas, "of at least 20 ft. of the South part of what is known as Coffelt Road, which crosses Highway #67, a four-lane highway." The court then decreed as follows:

"1. The defendants, Arkansas State Highway Commission and E. C. Rowlett Construction Co., Inc., and each of them are hereby permanently restrained and enjoined from closing or interfering in any manner with the free use of Coffelt Road Crossing or interfering with the flow of traffic on said crossing. The temporary injunction pertaining to said crossing heretofore entered in this cause is hereby made permanent.

2. That the plaintiff, Bessie Coffelt, has suffered no damage nor will the plaintiff, Bessie Coffelt, suffer damage by virtue of any construction or proposed construction of the exit or entry ramps by the Arkansas State Highway Commission within the 300 ft. right-of-way acquired by Pulaski County from D'Angelos on July 12, 1955, and she will not suffer any damages by the defendants tearing out the present existing exit ramp involved in this case and therefore the Temporary Injunction heretofore entered against the defendants pertaining to said ramp is hereby dissolved."

In the posture this case is presenting to us on appeal, the appellant's second and third points for reversal are really dependent upon the first point. The appellant argues that construction on Highway 67 was begun in 1956 or 1957 following entry of the county court order of December 16, 1955; that the appellee's husband, Kenneth Coffelt, held title to the property at the time the condemnation order was entered; consequently, the entry in 1956 or 1957 under the county court order was notice to the appellee that the Highway Commission was claiming title under the court order. The appellant argues inferentially that the twelve months statute of limitations under Ark. Stat. Ann. § 76-926 (Supp. 1973) was set in motion by such entry and any claim for damages the appellee might otherwise have had, was barred by limitations when her petition was filed in this case.

Thus, as we understand the contentions of the parties presented under the points the appellant has designated, the question on this appeal is narrowed to whether the statute of limitations has run on any claim for damages the appellee may have for the taking of the *fee title* involved under the county court order of December 16, 1955.

In *Ark. State Highway Comm'n* v. *French*, 246 Ark. 665, 438 S.W. 2d 276, we reviewed some of our previous decisions pertaining to when the statute of limitations begins running against a claim of the nature here involved and our conclusion as recited in the *French* case is as follows:

"As we read these decisions the one year statute of limitations does not begin to run against a property owner until he is served with notice by legal process or until an entry is made by the condemning agent."

It is apparently conceded that the Coffelts were not served with notice by legal process pursuant to the aforesaid county court order. Consequently, the question is whether the entry by the Highway Commission on the land involved constituted such notice as to set in motion the statute of limitations. We are of the opinion that it did not under the facts in this case. The Highway Commission had a perfect right, which no one questions, to enter into possession and

construct the highway under the right-of-way easement deed from the D'Angelos to Pulaski County. There is nothing in the record to place the appellee on notice that the appellant, by its entry onto the property involved, was entering the property under a claim of fee title. All of the appellant's actions were consistent with the rights it acquired under the easement deed from the appellee's predecessors in title. Whether or not the appellee would be damaged by the taking of the *fee*, beyond or in addition to the rights the appellant acquired by easement deed, is a matter yet to be determined, but a matter which the appellee has a right to have determined and upon which the statute of limitations has not run in this case.

We do no pass upon the effect of the various deeds on damages claimed in this case, but we are of the opinion the chancellor's finding that the appellee owns the fee title to at least twenty feet of Coffelt Road is not against the preponderance of the evidence. We conclude, therefore, that the chancellor did not err in granting the injunction until the question of damages, if any, is fully determined.

As to the points relied on by the appellee on cross-appeal, we are of the opinion the chancellor was correct in dissolving the temporary injunction entered on August 23, 1972, without the Arkansas Highway Commission affirmatively requesting permission to make a deposit and comply with this court's per curiam order dated September 25, 1972. The per curiam order of this court did not hold that the Highway Commission must request affirmative relief as argued by the appellee. We only held in our per curiam order that the restraining order entered by the chancellor on August 23 be reinstated and "remain in effect *until this case is disposed of or until* the appellees have either filed an eminent domain proceeding or shall have deposited an adequate amount," etc. (Emphasis added). The chancellor's findings that "There has been no loss of ingress or egress to the plaintiff by virtue of any construction or proposed construction of the exit or entry ramps on Highway #67, and, therefore, the plaintiff would not be entitled to any damages," is not against the preponderance of the evidence. Consequently, we affirm

the chancellor's decree on the appeal as well as on cross-appeal.

The decree is affirmed.

Supplemental Opinion on Denial of
Rehearing delivered June 2, 1975
522 S.W. 2d 839

JOHN A. FOGLEMAN, Justice. On petition for rehearing, appellant states the following as one ground:

The Court erred in overruling principles of law announced in the cases of *Arkansas State Highway Commission v. Palmer*, 222 Ark. 603, 261 S.W. 2d 772, and *The State Life Insurance Company of Indianapolis, Indiana v. Arkansas State Highway Commission*, 202 Ark. 12, 148 S.W. 2d 671. The principles of law were (1) that where a county condemns land for highway purposes upon petition of the Arkansas State Highway Commission, the county becomes liable for damages arising from the county court order and not the Arkansas State Highway Commission; (2), where appellees have a remedy at law in that they can pursue their claim against the county for damages arising from the county court order, equity should not grant an injunction.

In argument, appellant says that we held that the statute of limitations had not run against appellee and that appellee still has a right to determination of her damages resulting from the taking of the fee title by the county court order, but complains that we overlooked the fact that appellee's claim for damages is against the county and not appellant under our holding in *Arkansas State Highway Commission* v. *Palmer*, 222 Ark. 603, 261 S.W. 2d 772. Thus, says appellant, appellee had an adequate remedy at law and injunction was improper under our holding in *The State Life Insurance Company of Indianapolis, Indiana* v. *Arkansas State Highway Commission*, 202 Ark. 12, 148 S.W. 2d 671.

In spite of the fact that we said in our original opinion that appellee still owns the fee, appellant correctly interprets the effect of our holding in that, regardless of who may be said to be the owner of the fee, appellant cannot proceed to use the area until just compensation has been paid or secured to appellee.

Appellee has asserted rights in the Coffelt Road Crossing at least from September 18, 1972 when she moved that appellant be required to deposit $46,375 in the registry of the court, saying that closing the road at the intersection with Highway 67, without doing so would constitute a taking of private property without compensation in violation of the constitutions of Arkansas and of the United States. By an amendment to her complaint, she asserted that the first notice to appellee of appellant's intention to enter upon and close the crossing was on September 13, 1972, and that she would be damaged in the amount of $285,000. Appellant's answer was that the closing of Coffelt Road was a rerouting of traffic and a valid exercise of its police power.[1] In seeking to have vacated a temporary injunction restraining appellant from interfering with appellee's use of Coffelt Road crossing until appellant either deposited in the registry of the court a sum of money sufficient to cover the amount of appellee's damages or filed a condemnation proceeding taking the crossing, appellant again relied only on the police power. In its brief on this motion, appellant first mentioned the county court order, saying that appellee at that time (December 16,

---

[1]But see *Arkansas State Highway Commission* v. *Union Planters Bank*, 231 Ark. 907, 333 S.W. 2d 904.

1955) had no standing to seek compensation for any damages resulting from the action proposed by appellant. Appellant again relied upon its police power and asserted that under *Arkansas State Highway Commission* v. *Bingham*, 231 Ark. 934, 333 S.W. 2d 728, there was no compensable damage to appellee, since the highway had been designated in the county court order as a controlled access facility. Appellee again amended her complaint to allege fee ownership of the crossing and a prescriptive right of ownership and use of it. Appellant's answer consisted principally of a denial of these allegations.

In the court's decree of April 17, 1974, there was a specific finding that there had been neither notice of taking of Coffelt Road crossing nor entry upon it. Appellant's motion for reconsideration in the trial court was upon these issues principally. Otherwise it amounted to a restatement of positions previously taken by it.

Never at any time did appellant raise the issue it now asserts on petition for rehearing in the trial court. As will be seen from its statement of points, it never raised the issue in its brief on appeal. Neither of the cases now relied upon was cited until the filing of the reply brief. There appellant cited *Palmer* and asserted for the first time, that Pulaski county and not appellant, was liable for any claim of appellee for just compensation. This was too late. It was an issue raised for the first time on appeal. *State Life Insurance Co.* v. *Arkansas State Highway Commission*, supra, was never mentioned. We cannot now consider this issue and we have not overruled either case. Furthermore, we do not perceive any error or conflict with *State Life Insurance Co.* v. *Arkansas State Highway Commission*, supra. As a matter of fact, it was recognized in *Palmer* that the chancery court might do what it did. There we said:

> . . . while the property owner may not sue the state or the commission acting in its name for damages, he may restrain the commission from taking his property until the damages have been paid, or provision for payment made.

In *Palmer* both the county court and the circuit court had rendered judgment against both the county and the highway department.

It was certainly within the jurisdiction of a court of equity to enjoin appellant from trespassing upon or appropriating the property of a landowner when the right to compensation had been denied because the fiscal year in which a county court's order of condemnation was issued had expired and the revenues exhausted, leaving the landowner without an adequate remedy at law. *Arkansas State Highway Commission* v. *Hammock*, 201 Ark. 927, 148 S.W. 2d 324. See also, *Arkansas State Highway Commission* v. *French*, 246 Ark. 665, 439 S.W. 2d 276; *Arkansas State Highway Commission* v. *Cook*, 236 Ark. 251, 365 S.W. 2d 463. In *Hammock*, we said that the chancery court erred in holding that the county court order was void, but we affirmed the injunction there issued insofar as it enjoined appellant from taking the land until the landowners were compensated. In *French*, as here, there had been no entry upon the property before the decree was entered.[2] In *Cook*, 35 years had elapsed between the county court order and appellant's undertaking to take possession of a disputed ten foot strip not entered upon at the time of the county court order.

Another case similar to this one is *Arkansas State Highway Commission* v. *Anderson*, 234 Ark. 774, 354 S.W. 2d 554, where the county court order was 25 years old at the time appellant sought to enter upon right-of-way beyond the limits of that it had been using. We sustained a decree enjoining the Highway Department from going on the strip involved or attempting to use the same. Although it was clearly proper for the chancery court to enjoin appellants from entering upon the crossing until whatever compensation was due appellee has been paid or secured, it may well be that appellee has recourse to the county court under the authorities hereinabove cited and such cases as *Miller County* v. *Beasley*, 203 Ark. 370, 156 S.W. 2d 791 and *Arkansas State Highway Commission* v. *Croom*, 225 Ark. 312, 280 S.W. 2d 887. Appellant simply did not raise this question in the trial court and raised it belatedly here. The ownership of the fee is not material; appellee's right to a day in court on just compensation is. There has not been either legal notice of the taking or

[2]As pointed out in our original opinion in this case, the entry made upon the right-of-way at the time of the original construction was not inconsistent with the easement and thus insufficient to serve as notice of the rights appellant claims.

entry by appellant, and there will not be as long as the injunction is in effect.

We cannot reverse the decree on an issue not raised.

SMITH and BYRD, JJ., concur only in the denial of the rehearing.

JONES, J., would grant the rehearing.