# ARKANSAS STATE HIGHWAY COMMISSION
## *v.* W. R. RICE, et ux

75-138                                    532 S.W. 2d 727

Opinion delivered February 2, 1976
[Rehearing denied March 8, 1976.]

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Dwain Hodge, William Wright, Hardin, Jesson & Dawson, H. Clay Robinson, Pearce, Robinson, McCord & Rotenberry,* for appellees.

JOHN A. FOGLEMAN, Justice. In this case two actions are consolidated. In the first proceeding (1971), the appellant filed a petition in chancery court seeking to compel the appellees to consummate a contract for the sale of their land to the appellant. The appellee landowners answered denying appellant's right to specific performance. They also filed a motion to transfer the case to the circuit court specifically asserting they were entitled to have a jury determine their damages for the acquisition of their lands by the appellant for highway purposes. The appellant resisted their motion to transfer. The chancellor denied the appellant's petition for specific performance. Although it appears that neither party requested it, the chancellor ordered the property involved in the litigation condemned, granted the appellant immediate possession, and retained jurisdiction to assess damages for condemnation. The appellant, thereafter, proceeded with the construction of the highway.

About three years later, or in 1974, the appellant, through its contractor, had completed the highway across appellees' lands except for the erection of a fence between appellees' property and the highway. This fence would have affected appellees' access. When the contractor attempted to

complete the construction, appellees sought an injunction asserting that the 1971 decree was a nullity and that the condemnation provision in that decree was beyond the chancery court's jurisdiction. The 1971 and 1974 cases were consolidated. The present chancellor issued a permanent injunction against the appellant and held that the 1971 decree was a nullity because the chancery court had no jurisdiction to condemn appellees' lands and access rights. Appellant first contends that the chancellor erred in declaring its 1971 decree a nullity and dismissing the case.

Ark. Stat. Ann. § 76-532 (Repl. 1957) empowers the Arkansas State Highway Commission to condemn property. § 76-533 states with specificity the manner in which that authority is to be exercised. The commission exercises its power "by filing an appropriate petition and condemnation in the Circuit Court of the County in which the property sought to be taken is located," then "it shall be the duty of the Circuit Court to impanel a jury of twelve (12) men, as in other civil cases, to ascertain the amount of compensation which the State Highway Department shall pay, and the matter shall proceed and be determined as in any other civil cases." The legislature has authorized only the circuit courts to condemn property for the Arkansas State Highway Commission.

Appellant argues, however, that once the chancery court had jurisdiction, which it did in appellant's action for specific performance in 1971, it has jurisdiction for all purposes and, therefore, had a right under the "clean up doctrine" to retain jurisdiction for eminent domain purposes and award damages for the taking of appellees' land. There are cases where we have recognized that equity can retain jurisdiction for condemnation purposes under the "clean up doctrine." For example are *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W. 2d 58; *Burton* v. *Ward, Chancellor*, 218 Ark. 253, 236 S.W. 2d 65; and *Gregory* v. *Oklahoma Mississippi River*, 223 Ark. 668, 267 S.W. 2d 953. In *Gregory*, suits were brought in the circuit court by the condemnor to condemn easements. However, *the property owners* requested the cause be transferred to chancery court. The owners later made an effort to have it transferred back to the circuit court. The request to remand was denied and on this issue, we said:

It is our view that equity was definitely *selected* [by the appellant landowners] as an appropriate forum and the appellants are not now entitled to lift the cause from the court they asserted to be the only one with sufficient jurisdiction to afford complete relief. **** [W]here equity jurisdiction exists in respect of an essential element of the litigation and such *jurisdiction* is *invoked*, the process draws full power to determine all of the rights that are involved. (Emphasis ours.)

In the case at bar, the issue however is not whether the chancery court can award damages once it acquires jurisdiction but whether the chancery court had jurisdiction. The first action originated in chancery court when the appellant condemnor brought an action for specific performance. The appellee landowners then asked that the action be transferred to circuit court to give them their statutory right of a trial by jury for the award of their just compensation. The court, as indicated, after denying appellant's motion for specific performance, held that the highway department needed the land, condemned it, and retained jurisdiction to determine damages. It does not appear that the appellee property owners or the appellant ever requested the chancery court at any time to hear those aspects of the case. To the contrary, let it be remembered, they resisted it from the very beginning. The landowners neither selected not wanted equity jurisdiction. We are not favored with any citation where this court has held that the chancery court can use the "clean up doctrine" to assume jurisdiction in a condemnation case where the issue was not before the court, and the landowners, from the beginning, as here, resisted equity jurisdiction. We feel that it is the better rule of law to limit and not extend equity jurisdiction in condemnation cases. Cf. *Spitzer* v. *Barnhill*, 237 Ark. 525, 374 S.W. 2d 811. If the action of the court below in the first proceeding was sanctioned by this court, then a condemning authority could come into equity seeking some equitable relief and then by the "clean up doctrine" keep the unwilling landowner in equity, thereby depriving him of his right to a jury trial on the issue of just compensation. We do not feel this is the import of those cases, which have accorded jurisdiction, under the "clean up doctrine," to equity on condemnation cases. As indicated, the legislature has given the

landowner the right to have his damages ascertained by a jury of his peers only in a circuit court proceeding.

Therefore, we hold the chancery court lacked jurisdiction in this case to condemn the property and award damages. Since the court lacked jurisdiction in the first instance, the failure to appeal is of no consequence inasmuch as a lack of jurisdiction is open, as here, to collateral attack. *Catlett* v. *Republican Party of Arkansas*, 242 Ark. 283, 413 S.W. 2d 651.

Appellant next contends for reversal that the trial court erred in making the injunction issued in 1974 permanent. We conclude that this proceeding was prohibited as a suit against the state by Art. 5 § 20 of the Constitution of Arkansas and an attempt to accomplish indirectly what clearly could not have been done directly, just as much as was the prayer of the landowner for mandamus to require the highway department to institute condemnation proceedings in *Bryant* v. *Arkansas State Highway Commission*, 233 Ark. 41, 342 S.W. 2d 415.

The very fact that the decree held void was a nullity and that it was so treated by the landowners from the date of its entry is a critical background fact in evaluating the standing of the landowner to enjoin the highway department's contractor from completing the construction. There can be no doubt that the landowners knew not only that the highway department had entered upon their land and done substantial construction, but that the highway department was engaged in the construction of a controlled access highway. The mere fact that the chancery court had no power to condemn the land in a specific performance suit does not eliminate the notice to the landowner of the purposes of the highway department disclosed in connection with that proceeding.

The complaint in the specific performance suit contained an allegation that the highway department was constructing a highway known as the Waldron Bypass, as job 4612, and that the lands to which the highway department sought a deed were needed for that purpose. The chancery court denied specific performance after a trial but made a fin-

ding that the part of the Rice tract described in the deed *and rights of easement of access and ingress and egress to and from the lands remaining were needed for highway purposes.* A plat supporting the highway department's position and the proposed warranty deed were exhibited to the highway department's complaint in the specific performance action. The decree in that action referred to the exceptions to the limitation of rights of ingress and egress shown on that plat.

The landowners sat idly by for 2 ½ years and watched construction without taking any steps whatever to protect their rights until the contractor undertook the very last part of the construction necessary to complete the job, i.e., building a fence to prevent ingress and egress to and from the Rice property at every point along the right-of-way boundary. The idea that the Rices did not know what the highway department was doing is unthinkable. To say the very least, they had knowledge of such facts sufficient to put them on inquiry and to charge them with knowledge of what that inquiry would unquestionably have disclosed. See *Woods* v. *Wright*, 254 Ark. 297, 493 S.W. 2d 129. There is not the slightest suggestion that there had been any deviation in the plans contemplated when the highway department filed the specific performance suit. As a matter of fact, at the very outset of the hearing which resulted in the decree now on appeal, while the parties were entering into certain stipulations, it was stated, in answer to an inquiry by the chancellor, that the plans for construction under job 4612 introduced by stipulation were the identical plans which were attached to the pleadings in the specific performance case, without any contradiction by the landowners.

Since the decision of *Arkansas State Highway Commission* v. *Partain*, 192 Ark. 127, 90 S.W. 2d 968, it has been clearly recognized that a landowner who acts before there has been a taking of his property or property rights may enjoin the taking until such time as just compensation has been paid or secured to him. In that case, however, it was stated:

> The property owner has no cause of action which may be maintained to recover his damages against the State. *Arkansas State Highway Commission* v. *Nelson Bros.,*

[191 Ark. 629, 87 S.W. 2d 394]. If he permits an agency of the State, such as the Highway Commission to appropriate his property he is limited to such relief as the State may provide.

We were not long in applying this rule to other landowners affected by the same taking as that involved in *Partain*. In *Arkansas State Highway Commission* v. *Kincannon, Judge,* 193 Ark. 450, 100 S.W. 2d 969, we held that other landowners who suffered the same damage as Partain from the same highway construction could not intervene in the condemnation suit filed as a result of the decision in the Partain case, because the highway commission had taken no action in regard to condemnation of the property of the intervening landowners and their intervention was, in effect, a suit against the state. See also, *Arkansas State Highway Commission* v. *Bush,* 195 Ark. 920, 114 S.W. 2d 1061.

In *Bryant* v. *Arkansas State Highway Commission,* supra, we held that once there had been a taking, any action to coerce the state was a suit against the state. In sustaining a demurrer to a complaint for mandamus to require the highway department to file an eminent domain proceeding against the plaintiff landowners, we said:

> ***But where the landowner stood by and permitted the Commission to take, occupy, and damage his lands, he could not maintain an action against the Commission to recover his damages, for such a coercive proceeding would constitute a suit against the State. *Federal Land Bank of St. Louis* v. *Arkansas State Highway Commission,* 194 Ark. 616, 108 S.W. 2d 1077; *Arkansas State Highway Commission* v. *Bush,* 195 Ark. 920, 114 S.W. 2d 1061.

In *Federal Land Bank of St. Louis* v. *Arkansas State Highway Commission,* supra, the landowner sought to enjoin further trespass upon its lands and use and occupancy of a road, bridge, and viaduct across them, on the basis that, after an original taking for the construction of the bridge and its approaches, the highway commission, without compensating the landowner, again entered upon the land, dug out the remaining tillable land and constructed another and higher

dump, completely destroying the value of the land. A demurrer to the complaint was sustained on the basis that the action was one against the state and that, in effect, the allegations of the complaint showed that the landowner stood by and permitted the state to appropriate, occupy and damage its land, in the second instance, without making compensation. We said:

> The instant suit is one to coerce the State by taking from the possession of the State a portion of one of its highways. Under the allegations of the complaint the State has wrongfully appropriated appellant's land, and the obligation to pay abides and in morals and good conscience should be discharged, but the State cannot be compelled to discharge this obligation through the coercion of being deprived of a portion of its highway. **** Appellant had, therefore, the right to prohibit the Highway Commission, or any other agency of government, from taking its property until compensation had been paid. It was so expressly held in the case of *Arkansas State Highway Commission* v. *Partain,* 192 Ark. 127, 90 S.W. 2d 968. But, if the property owner fails to assert this right and permits the State to take and occupy his property before compensating him, he may not thereafter coerce compensation by retaking the property from the possession of the State. He must thereafter trust the State to deal fairly with its citizens. He then has no other remedy.

*Arkansas State Highway Commission* v. *Flake,* 254 Ark. 624, 495 S.W. 2d 855, is analogous to the case before us. It applies and reinforces the previous decisions treated above. In *Flake,* the emphasis was upon the landowner's standing by while substantial work was done. It was there pointed out that *Miller County* v. *Beasley,* 203 Ark. 370, 156 S.W. 2d 791, was an analogous case. In *Miller* where county court orders were involved and no notice of taking required, we held that an entry was necessary to complete the taking. In speaking of entry, we said:

> ***Such entry, being physical and visible, affords the proprietor an opportunity to exact payment or to re-

> quire a guaranteeing deposit. If there is neither payment nor deposit, resort may be had to injunction; but should the proprietor stand by and permit the land to be occupied and *the improvement to proceed until substantial road work has been done,* he is then relegated to the county's credit. [Emphasis ours.]

The only difference in that case and the others cited is that in one the landowner is relegated to the county's credit and in the other to the state's fairness in dealing with its citizens.

Our holding with reference to entry is in accord with the general rule. "Where an entry is made upon property by the condemnor and an act committed which indicates an intent to appropriate the property the taking is complete." 2 Nichols on Eminent Domain (3rd Ed.) 6-17, § 6.1 [2]. (*Miller County* v. *Beasley,* supra, is one of many authorities cited in support.) The author makes this further statement on Page 6-44 in § 6.21:

> Where an entity, vested with the power of eminent domain, enters into actual possession of land necessary for its purposes, with or without the consent of the owner, and the latter remains inactive while valuable improvements are being constructed thereon, the use of which require a continued use of the land, the appropriation is treated as equivalent to title by appropriation. It is open to some doubt whether one can be constitutionally deprived of his property without the recording of some definite statement of the extent of the taking; certainly he can stand in no worse position because the taking is *in pais.* Such taking is frequently referred to a "common law" taking or a *"de facto"* taking.

Here the owner clearly stood by until the taking was complete, even though the construction was not, so as to bar injunctive relief. This case cannot be equated with such cases as *Arkansas State Highway Commission* v. *Coffelt,* 257 Ark. 770, 520 S.W. 2d 294 and *Arkansas State Highway Commission* v. *Union Planters National Bank,* 231 Ark. 907, 333 S.W. 2d 904, where the taking of access rights and rights of ingress and egress could not have been contemplated by the landowner at the

time of the original taking. Here the landowner was clearly notified of the contemplated extent of the taking at the time of entry by the highway department and its contractors. It was the very thing that gave rise to the specific performance suit.

The decree is affirmed insofar as the holding that the 1971 decree was a nullity but reversed as to the permanent injunction and the injunction suit is dismissed.

The Chief Justice dissents as to the affirmance and concurs in the reversal. Justices Byrd, Holt and Roy concur in the affirmance and dissent as to the reversal.

CARLETON HARRIS, Chief Justice, dissenting in part, concurring in part. Referring to Scott Chancery Case No. 4612, in my view, the chancery court, under the "clean-up" doctrine, had jurisdiction. In the case of *Gregory v. Oklahoma Mississippi River Products Lines, Inc.*, 223 Ark. 668, 267 ..W. 2d 953, appellee filed two suits in Woodruff Circuit Court, seeking to condemn easements, the causes then being consolidated. The appellant landowner moved to transfer to chancery court, contending that too much land was being taken. This was done. The trial court held that the corporation had the right to condemn easements, did condemn, and the landowner appealed. This court held that equity was an appropriate forum and the court approached this problem as follows:

"The appeal presents two problems: (a) Was the Chancery Court's order permitting entry appealable? (b) Did equity have jurisdiction to decree complete relief?

"We have consistently held that where private property is to be taken, any public agency seeking to exercise the high prerogative of eminent domain must bring itself clearly within the law's contemplation. A corollary is that no more land may be taken than the public need requires.

"Another rule equally definite is that where equity jurisdiction exists in respect of an essential element of

litigation and such jurisdiction is invoked, *the process draws full power to determine all of the rights that are involved.* [My emphasis]. *Selle* v. *Fayetteville,* 207 Ark. 966, 184 S.W. 2d 58. ***

"The evidence convincingly shows that the company's purpose is to operate as a public service agency. It has no production of its own, but must transport commodities without discrimination. This being true, the Chancellor's finding that the easements were necessary will not be disturbed.

"But inasmuch as there has been no judgment fixing the damages (a judgment Chancery has a right to render) the appeals are premature. The consolidated causes will therefore be remanded with directions to proceed in a manner not inconsistent with this opinion, the sole question being the amount of damages."

See also *Burton* v. *Ward, Chancellor,* 218 Ark. 253, 236 S.W. 2d 65, consolidated with *Beedeville Special Dist. # 28* v. *Bone, Judge.*

Let it be noted that *Gregory* was not simply a matter of fixing damages, but rather the chancery court actually entered a condemnation order; in fact, as set out, the case was remanded back to chancery for the sole purpose of fixing damages.

This court says that in Case No. 4612, the Scott County Chancery Court had no jurisdiction to condemn, although I take it from the opinion that if the landowner had invoked the aid of the chancery court on equitable grounds, this court would hold differently. This presents, to me, an enigma, for if there was no jurisdiction of the subject matter, jurisdiction could not be conferred by consent or otherwise — "period." In other words, if a chancery court has no jurisdiction, as here, under the "clean-up" doctrine, to enter an order of condemnation, I cannot understand how it suddenly acquires jurisdiction of the subject matter (to condemn) simply because the landowner invokes the aid of that court.

Be that as it may, it is apparent that I consider that the chancery court, having originally properly acquired jurisdiction on the issue of specific performance, had jurisdiction to condemn and to determine the amount of damages, and under my view, the present decree should be reversed and the cause remanded to chancery court.

Referring now to Scott Chancery Case No. E7417, the injunction case, I concur in the result. Of course, since I feel that the chancery court, under the "clean-up" doctrine, had jurisdiction, it is my view that, if dissatisfied with the fact that the chancery court would determine damages, the Rices should have filed an appeal.

Admittedly, the decree under discussion (wherein the chancery court condemned the property) was entered in 1971. No appeal was ever taken by the landowner. To the contrary, appellees have sat by and permitted the highway department and its contractors to construct a new modern highway facility without any complaint; in fact, the highway has been completed across appellees' lands except for the erection of a fence between their property and the highway. Then, at the late date of 1974, a collateral attack was made upon the 1971 decree.

It is apparent, that in my opinion, the 1971 decree not having been appealed from, and the court having jurisdiction, the present effort for injunctive relief[1] comes too late, and I accordingly am of the view that the injunction was improperly granted.

FRANK HOLT, Justice, dissenting in part. I concur in that part of the majority opinion which holds that the chancery court lacked jurisdiction to condemn appellees' property and award damages. Consequently, its 1971 decree was a nullity in that respect. However, I cannot agree it was error for the chancellor to issue a permanent injunction in 1974 in a related proceeding. The majority opinion recognizes that if a landowner acts before the taking of his property rights, he has

[1]Of course, had my view prevailed in Case No. 4612, the case would be remanded to the Scott County Chancery Court for determination of damages.

the right to enjoin the taking until such time as just compensation is paid or secured to him. *Arkansas State Highway Comm. v. Partain*, 192 Ark. 127, 103 S.W. 2d 53 (1936). There we also said that if the landowner permits the highway department to appropriate his property, then he is limited to whatever relief the state provides. The rationale is that the landowner cannot sit idly by without any overt action and then institigate the litigation. This would be a coercive action and constitute a suit against the state. Here, however, the condemning authority instigated the litigation in 1971. The landowners, in response, sought and were denied adjudication of their property rights in the proper forum. The landowners were denied that right by a decree which today we hold a nullity. Manifestly, they were entitled, as they then asserted, to the right they sought. In the circumstances, I cannot say the appellee landowners sat idly by within the meaning of the cases cited in the majority opinion. Those cases are factually inapposite.

The appellees in their brief assert, and properly so, that "the core of this controversy is" about the taking of their access rights. As indicated, the 1971 litigation was instituted by the highway department when the appellee landowners refused to sign a deed giving the highway department controlled access rights to their property. The landowners had previously signed a contract to sell 2.24 acres to it. That agreement did not include controlled access rights. In the 1971 litigation the chancellor agreed that the landowners were not required under their agreement to sign a deed which conveyed their access rights to the highway department. It is undisputed that following this decree and during construction of the highway the appellees were exercising their rights of access. It is further undisputed that the landowners acted promptly whenever these rights were threatened by appellant through its contractor. From the very beginning and here, the appellee landowners have sought to have just compensation for their property rights determined by a jury in the circuit court. The appellant highway commission maintains the proper forum is a court of equity where the department initiated the litigation. Today's opinion precludes either forum to the parties. No doubt, it will come as quite a surprise to the landowners and the condemning authority since neither has sought the claims commission as being the proper forum.

Again, I emphasize that the parent litigation was initiated by the state's authority. It is, therefore, most difficult for me to perceive how the injunctive litigation which followed the state's action can be construed as a coercive action against the state. I would affirm the decree.

BYRD and ROY, JJ., join in the dissent.